[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Emhoff v. Medina Cty. Bd. of Elections,* Slip Opinion No. 2018-Ohio-1660.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-1660

THE STATE EX REL. EMHOFF *v*. MEDINA COUNTY BOARD OF ELECTIONS ET AL.

THE STATE EX REL. LOWERY *v*. MEDINA COUNTY BOARD OF ELECTIONS ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Emhoff v. Medina Cty. Bd. of Elections,* Slip Opinion No. 2018-Ohio-1660.]

*Prohibition—Writ of prohibition sought to prevent judicial candidate's name from appearing on ballot—Relators allege candidate failed to satisfy R.C. 2301.01's six-years-of-practicing-law requirement—Secretary of state did not abuse his discretion in breaking tie in favor of certifying candidates name to the ballot—Writ denied.*

(Nos. 2018-0436 and 2018-0437—Submitted April 19, 2018—Decided April 27, 2018.)

IN MANDAMUS and PROHIBITION.

_____

**Per Curiam.**

{¶ 1} To be eligible to serve as a judge on a court of common pleas, a person must satisfy certain requirements, among them that he or she "has, for a total of at least six years preceding the judge's appointment or commencement of the judge's term, engaged in the practice of law in this state." R.C. 2301.01. In these consolidated expedited election cases, relators, Allen Lowery and Mary E. Emhoff, seek writs of mandamus and/or prohibition to prevent respondent Heidi R. Carroll from appearing on the May 8, 2018 ballot as a candidate for the Republican Party nomination for Medina County Common Pleas Court judge, Domestic Relations Division. The question these cases present is whether respondent Secretary of State Jon Husted abused his discretion or acted in clear disregard of applicable law when he determined that Carroll has the requisite 72 months of legal-practice experience to qualify for a seat on the common-pleas-court bench. For the reasons set forth below, we hold that he did not abuse his discretion, and thus, we deny the writs of prohibition. We dismiss the claims for writs of mandamus for lack of jurisdiction.

## I. Background

{¶ 2} Heidi Carroll was admitted to the Ohio bar in 2002. On April 7, 2017, she filed a Declaration of Candidacy Petition with respondent Medina County Board of Elections seeking to appear on the May 8, 2018 primary ballot as a Republican judicial candidate for the Medina County Common Pleas Court, Domestic Relations Division.

{¶ 3} On February 8, 2018, the board officially certified Carroll's petition. On February 13, the board received three separate protests to Carroll's candidacy, one from Lowery, one from Emhoff, and one from Mary L. Guilfoyle, alleging that Carroll lacked the years-of-practice experience required to be a judicial candidate. The protests relied primarily on Carroll's resume, which showed the following professional experience after her graduation from law school in 2001:

2

- September 2001 to June 2003: Medina County School District, substitute teacher

- September 2003 to December 2007: Cleveland Clinic Foundation, senior compliance specialist

- December 2007 to December 2008: Reminger Co., L.P.A., associate attorney

- June 2010 to November 2010: MetroHealth, associate director of health-information management

- May 2012 to present: University Hospitals, clinical-research regulatory specialist III

The protesters accepted Carroll's one year at the Reminger law firm as experience in the practice of law. They rejected Carroll's time with the Cleveland Clinic as the practice of law because, they alleged, the position did not require a law degree or law license and her primary duties were "data collection, auditing and reporting," not " 'furnishing legal counsel, drafting legal documents and pleadings, interpreting and giving advice regarding the law, or preparing, trying, or presenting cases before courts, tribunals, executive departments, administrative bureaus, or agencies,' " protesters' letters, quoting Gov.Bar R. I(9)(B)(2). However, they noted that she appeared as attorney of record in three Medina County domestic-relations cases between June 2015 and May 2016. Even assuming that that activity should count, they alleged that Carroll was well short of the six-year requirement.

{¶ 4} Carroll filed a written response to the three protest letters with the board on February 23, 2018. In her response, Carroll asserted that she had been engaged in the practice of law "for at least eight years and five months" and would exceed nine years by the start of her judicial term on January 1, 2019. She identified the following work experience:

3

- Cleveland Clinic Foundation, senior compliance specialist (four years and four months)

- Reminger Co., L.P.A., associate attorney (one year)

- Akron General Hospital, corporate compliance specialist (three months)

- OhioGuidestone, director of corporate compliance/chief privacy officer, (one year and six months and counting)

- pro bono attorney for Legal Aid (one year and two months and counting) (overlapping with her time at OhioGuidestone)

Carroll's response included an affidavit from John E. Steiner Jr., her supervisor at the Cleveland Clinic, attesting that she had "actively engaged in the practice of law" at the Cleveland Clinic and describing her work responsibilities.

{¶ 5} On February 21, counsel for the protestors served a subpoena on the Cleveland Clinic, demanding:

1. a job description of the Senior Compliance Specialist position during any of the time September 2003 to December 2007 * * *;

2. an authentication of the attached job description];

3. a current job description for a similar job as to the Senior Compliance Specialist job; or

4. a copy of a policy of the Cleveland Clinic about who may engage in the practice of law for the Cleveland Clinic Foundation.

{¶ 6} On February 26, the protesters filed a joint reply in support of their protests. Among other points, they noted that Carroll's own description of her job

duties at the Cleveland Clinic did not include the tasks identified by Steiner as the duties she performed that constituted the practice of law. The protesters formally requested that the board continue its hearing because the Cleveland Clinic had not yet responded to their subpoena and requested that if the Cleveland Clinic did not respond to the protesters' subpoena, the board issue a subpoena to the Cleveland Clinic for records concerning Carroll's employment and require an attorney from the Cleveland Clinic's Office of General Counsel to appear and testify at the hearing.

{¶ 7} Also on February 26, the board held an evidentiary hearing on the protests. The transcript indicates that the protestors had presented a request for a subpoena to be issued to OhioGuidestone and that the board declined to issue the subpoena. The protestors again requested a continuance, which was effectively overruled because the board went ahead with the hearing.

{¶ 8} At the close of the testimony, a motion was made and seconded that the board find that Carroll *did* have the requisite six years of experience to appear on the ballot. Board members Larry Cray and Sharon Ray voted in favor of the motion. Board members John Welker and Pam Miller voted against the motion. Confronted with a tie vote, the board submitted the matter to Husted to break the tie. Board members Miller and Welker submitted a letter defending their conclusion that Carroll is not qualified for the position, and members Ray and Cray submitted a letter defending their conclusion that she is.

{¶ 9} In a letter dated March 14, 2018, Husted broke the tie in favor of placing Carroll's name on the ballot. Husted concluded that her four years and four months at the Cleveland Clinic *did* constitute the practice of law, based on Carroll's testimony and on the description of her work responsibilities set forth in John Steiner's affidavit. He also found that Carroll had been an associate at a law firm for at least eight months beginning in December 2007 and that starting in 2015, she represented clients on a pro bono basis for at least 14 months. In conclusion, Husted

wrote, "[t]he four years and four months Ms. Carroll spent at the Cleveland Clinic Foundation, coupled with her prior legal practice of 22 months amounts to a total of 74 months (i.e., six years two months) of active engagement in the practice of law." (Footnote deleted.) In a footnote, Husted noted that the actual total might be larger, but that because she exceeded the threshold based on those three jobs, it was unnecessary to consider other facets of her work history. He therefore broke the tie in favor of the motion to certify her name to the May 8 ballot as a candidate for the Republican nomination to the Medina County Common Pleas Court, Domestic Relations Division.

## II. Procedural History

{¶ 10} On March 22, Emhoff filed a complaint in this court for writs of mandamus and/or prohibition against Husted, the board, its individual members (Cray, Welker, Ray, and Miller), and Carroll (case No. 2018-0436). Later that day, Lowery filed a second complaint for writs of mandamus and/or prohibition, naming the same respondents with the exception of Carroll (case No. 2018-0437). Pursuant to S.Ct.Prac.R. 12.08, the cases were automatically expedited because they were filed within 90 days of the May 8 election.

{¶ 11} On March 30, 2018, Carroll filed a motion for leave to intervene as a respondent in case No. 2018-0437. We denied the motion, but sua sponte ordered the two cases consolidated. __ Ohio St.3d __, 2018-Ohio-1271, 94 N.E.3d 577. The cases are now fully briefed.

## III. Legal Analysis

### A. Mandamus and prohibition

{¶ 12} To be entitled to a writ of mandamus, a party must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, 13. If the allegations of a complaint

6

indicate that the real objects sought are a declaratory judgment and a prohibitory injunction, then the complaint does not state a claim in mandamus and must be dismissed for lack of jurisdiction. *State ex rel. Grendell v. Davidson*, 86 Ohio St.3d 629, 634, 716 N.E.2d 704 (1999).

{¶ 13} Mandamus is not the appropriate method for challenging a decision of the secretary of state or a board of elections to place a candidate on the ballot. *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 8-10 (dismissing mandamus claim for lack of jurisdiction, finding that the relator's "mandamus claim [was] an ill-disguised request for prohibitory injunctive relief: to prevent Nelson's candidacy at the November 5, 2002 general election"). Rather, prohibition is the appropriate remedy for these circumstances. *Id.* at ¶ 11. We therefore dismiss Lowery's and Emhoff's claims for writs of mandamus for lack of jurisdiction.

{¶ 14} With respect to the claims sounding in prohibition, when we review the decision of a county board of elections in a prohibition action, our standard is whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions. *Id.* When a board of elections arrives at a tie vote, the matter must be submitted to the secretary of state to break the tie and decide the question. R.C. 3501.11(X). The decision of the secretary "shall be final." *Id.* However, as with a decision by a board of elections, the secretary's decision is subject to review in an extraordinary action "to determine whether the Secretary of State engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or applicable legal provisions." *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 583, 651 N.E.2d 995 (1995).

### B. Allegations of bias

{¶ 15} Patricia Pietrasz is an employee of the Medina County Board of Elections. Pietrasz also circulated one of Carroll's candidacy petitions. Husted's permanent directive, issued on August 8, 2017, states that employees of the boards

of elections shall not "[c]irculat[e] a petition for any candidate * * * when that employee's regular or intermittent duties involve the processing of the petitions in question, including but not limited to the determination of the sufficiency and validity of the petition in question." Directive 2017-11, Section 1.02(C)(5)(c)(iii)(02), available at https://www.sos.state.oh.us/globalassets /elections/directives/2017/dir2017-11_eom_ch_02.pdf (accessed Apr. 24, 2018). Lowery seeks to invalidate the board's tie vote due to Pietrasz's alleged violation of this directive.

{¶ 16} However, Lowery waived this matter by failing to raise it in his protest. An issue that is not raised administratively cannot be raised in a subsequent writ action. *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81-82, 679 N.E.2d 706 (1997). This rule applies to proceedings before a county board of elections. *See State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections*, 144 Ohio St.3d 579, 2015-Ohio-5306, 45 N.E.3d 994, ¶ 47; *see also State ex rel. Tam O'Shanter Co. v. Stark Cty. Bd. of Elections*, 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, ¶ 11 (holding that evidence that was not presented to a board of elections is not relevant to whether the board abused its discretion or clearly disregarded applicable law).

{¶ 17} Alternatively, Lowery asserts that Larry Cray, one of the board members who voted in favor of certifying Carroll's candidacy to the ballot, had undisclosed conflicts of interest. In his merit brief, Lowery bases the allegation on the fact that Cray serves on the Republican Party Executive Committee with Pietrasz and the fact that Cray is Facebook friends with Carroll. But in his reply brief, he adds a new allegation: Cray did not disclose that he had signed one of Carroll's petitions. Attached to the reply brief is a copy of a part-petition indicating that the signers certify that Carroll "is, in [the signers'] opinion, well qualified to perform the duties of the office or position to which [she] desires to be elected." The third signature on the first page is Cray's. Based on these facts, Lowery asserts

8

that the court should vacate Cray's vote and enter a decision on the protest based on the three remaining votes.

{¶ 18} Once again, however, Lowery has waived the issue by failing to raise it at the earliest opportunity, that being before the board itself.

### C. Carroll's experience in the practice of law

{¶ 19} Whether a judicial candidate was engaged in the practice of law is a mixed question of law and fact. A board of elections has the right to determine what "the practice of law" means as a statutory qualification for judge. *State ex rel. Kelly v. Cuyahoga Cty. Bd. of Elections*, 70 Ohio St.3d 413, 415, 639 N.E.2d 78 (1994). However, that determination is subject to our review in accordance with Article IV, Section 2(B)(1)(g) of the Ohio Constitution, which confers "exclusive jurisdiction over all matters related to the practice of law" upon this court. *Disciplinary Counsel v. Alexicole, Inc.*, 105 Ohio St.3d 52, 2004-Ohio-6901, 822 N.E.2d 348, ¶ 8; *see also Cleveland Bar Assn. v. CompManagement Inc.,* 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 39 ("This court has exclusive power to regulate, control, and define the practice of law in Ohio").

{¶ 20} In his decision letter, Husted expressly cited Gov.Bar R. I(9)(B) as giving "persuasive guidance" for determining the time period in which Carroll had engaged in the practice of law. Indeed, in a recent decision involving a practice-of-law requirement in the Westlake City Charter, the lead opinion looked specifically to the definition of "the practice of law" in Gov.Bar R. I(9)(B). *State ex rel. Rocco v. Cuyahoga Cty. Bd. of Elections*, 151 Ohio St.3d 306, 2017-Ohio-4466, 88 N.E.3d 924, ¶ 19 (lead opinion).

{¶ 21} Gov.Bar R. I(9)(B) provides that the "practice of law," for purposes of admitting an applicant to practice law in Ohio without examination, includes:

(1) Private practice as a sole practitioner or for a law firm, legal services office, legal clinic, or similar entity, provided such

practice was performed in a jurisdiction in which the applicant was admitted * * *.

(2) Practice as an attorney for a corporation, * * * provided such practice was performed in a jurisdiction in which the applicant was admitted, * * * and involved the primary duties of furnishing legal counsel, drafting legal documents and pleadings, interpreting and giving advice regarding the law, or preparing, trying, or presenting cases before courts, tribunals, executive departments, administrative bureaus, or agencies.

The standard articulated in Gov.Bar R. I(9)(B) coincides with our statements in prior ballot-access cases involving practice-of-law requirements:

"The practice of law is not limited to the conduct of cases in court. It embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general *all advice to clients* and all action taken for them in matters connected with the law."

(Emphasis added.) *State ex rel. Devine v. Schwarzwalder*, 165 Ohio St. 447, 453, 136 N.E.2d 47 (1956), quoting *Land Title Abstract & Trust Co. v. Dworken*, 129 Ohio St. 23, 1932 N.E. 650 (1934), paragraph one of the syllabus. These are the same parameters we use to identify conduct by nonattorneys that constitutes the unauthorized practice of law. *See Disciplinary Counsel v. Harris*, 137 Ohio St.3d 1, 2013-Ohio-4026, 996 N.E.2d 921, ¶ 7, citing *Cleveland Bar Assn v.*

*CompManagement, Inc.*, 111 Ohio St.3d 444, 2006-Ohio-6108, 857 N.E.2d 95, ¶ 22.

{¶ 22} The critical inquiry is whether a particular task or activity " 'require[s] legal analysis.' " *Miami Cty. Bar. Assn v. Wyandt & Silvers, Inc.*, 107 Ohio St.3d 259, 2005-Ohio-6430, 838 N.E.2d 655, ¶ 12, quoting *Columbus Bar Assn. v. Verne*, 99 Ohio St.3d 50, 2003-Ohio-2463, 788 N.E.2d 1064, ¶ 5. Filling in a preprinted form contract for the purchase of real property is a purely clerical service that does not require "the exercise of legal skill" and may therefore be performed by nonattorneys. *Gustafson v. V.C. Taylor & Sons, Inc.*, 138 Ohio St. 392, 397, 35 N.E.2d 435 (1941). However, a certified public accountant cannot advise clients regarding how best to structure their business, because those clients "need to know the legal differences between and formalities of available structures and then be advised according to their best interests, taking into account personal and practical concerns, not just tax consequences." *Verne* at ¶ 5; *see also Disciplinary Counsel v. Robson*, 116 Ohio St.3d 318, 2007-Ohio-6460, 878 N.E.2d 1042, ¶ 10 (holding that the respondent engaged in the unauthorized practice of law by advising another person in corporate-structuring strategies).

{¶ 23} By relying on the standards we have articulated, and specifically, on Gov.Bar R. I(9)(B), Husted employed the correct legal framework in making his decision. What remains for our review is whether the record supports his factual conclusions or whether he abused his discretion in reaching the conclusions he did. In making our determination, we adhere to the well-settled principle that a legally sound decision based on substantial but conflicting evidence cannot be an abuse of discretion. *State ex rel. Mann v. Delaware Cty. Bd. of Elections*, 143 Ohio St.3d 45, 2015-Ohio-718, 34 N.E.3d 94, ¶ 16.

{¶ 24} While leaving room for the possibility that other items in her background would qualify as practicing law, Husted concluded that Carroll

satisfied the 72-month requirement by totaling her experience in three venues: the Reminger law firm, the Cleveland Clinic Foundation, and Legal Aid.

*1. Carroll's employment at the Reminger law firm*

**{¶ 25}** Carroll testified that she began to work at the Reminger law firm in December 2007. Between September and December 2008, she was on maternity leave, and at the end of her leave, she did not return to the firm. Based on this testimony, Husted concluded that she had engaged in the practice of law "for a period of at least eight (8) months."

**{¶ 26}** In their complaints, Emhoff and Lowery both concede that Carroll's employment with the Reminger law firm constitutes eight months of practicing law. Husted's conclusion that she is entitled to credit of at least eight months for this work has therefore not been challenged.

*2. Carroll's employment at the Cleveland Clinic Foundation*

**{¶ 27}** The heart of this case is Husted's decision that Carroll's work at the Cleveland Clinic Foundation constituted the practice of law, because if her time at the Cleveland Clinic is not included, then the total of all her other alleged legal-practice experiences falls short of the required 72 months.

**{¶ 28}** At the protest hearing, Carroll testified: "I provided legal advice while at the Cleveland Clinic. I analyzed and provided regulatory advice at the Cleveland Clinic." She worked for the Corporate Compliance Department, and in that position, she "had to be able to say, based on [her] interpretation of the law, [whether particular situations needed] to be reported to the government entities." And she testified that the Cleveland Clinic paid for her continuing-legal-education courses and her biennial attorney-registration fees "because it was recognized that [her] legal degree was important at the Cleveland Clinic."

**{¶ 29}** John Steiner, her supervisor at the Cleveland Clinic through 2006, did not testify. But in his affidavit, he attested:

12

In her position as a Compliance Specialist, and later as a Senior Compliance Specialist for the Cleveland Clinic from September 2003 to December 2007, Ms. Carroll actively engaged in the practice of law by:

a. providing legal opinions to the internal customers, through her development and review of policies and procedures to ensure that they met the necessary legal and regulatory requirements;

b. advising Clinic employees about legal and regulatory issues related to vendors, projects, and sales and marketing;

c. advising clients on complex reimbursement issues arising under Medicare and Medicaid Services (CMS), and Medicare intermediaries and carriers;

d. providing legal advice and guidance on the implementation of the Compliance Plan, accreditation standards, and Institutional Review Board;

e. providing advice and counsel on gap analysis and documentation that the processes implemented are compliant with rules and regulations; and

f. conducting numerous legal training sessions to Clinic employees on federal and state regulatory law topics such as HIPAA, the Federal Food and Drug Regulations (FDA), CMS regulations and the Federal and State False Claims Act, and/or Anti-kickback statute.

In addition, Steiner cited two legal articles coauthored by Carroll while he was her supervisor at the Cleveland Clinic.

**{¶ 30}** Carroll's testimony and Steiner's affidavit establish that she was engaged in the practice of law. It is clear from Carroll's testimony quoted above that while working for the Cleveland Clinic, Carroll provided legal advice based on her analysis of the law, which is the hallmark of practicing law, *Verne*, 99 Ohio St.3d 50, 2003-Ohio-2463, 788 N.E.2d 1064, at ¶ 5.

**{¶ 31}** In her merit brief, Emhoff lists 14 facts that she claims support the conclusion that Carroll was not engaged in the practice of law when she worked as a compliance specialist for the Cleveland Clinic. Some of these facts are of dubious relevance. There is, for example, no requirement that a job title contain the word "attorney" in order for the job holder to be engaged in the practice of law, nor must the job holder be employed in or report to the employer's law department. And it is not surprising that Carroll did not maintain professional-malpractice insurance, considering that she provided legal advice primarily, if not exclusively, to other employees at the large organization for which she worked.

**{¶ 32}** Other facts cited by Emhoff relate to the weight of the evidence. For example, her allegation that Carroll's *primary* duties were those set forth in the Cleveland Clinic's description of the job or in Carroll's resume or on her Facebook page is wholly based on Emhoff's subjective view as to which evidence is most credible. It is not the province of this court to reweigh the evidence.

**{¶ 33}** However, Emhoff and Lowery present one argument as to why Husted and/or the board erred as a matter of law, and it relates to the board's and Husted's consideration of the Steiner affidavit. Emhoff and Lowery argue that it was error for the board and Husted to consider the affidavit because it was not admitted into evidence at the protest hearing. And as a companion to this argument, they assert that the board erred in failing to grant their request that it continue the hearing and issue a subpoena to the Cleveland Clinic. These omissions, Lowery suggests, violated the board's duty to "maintain the regularity of the proceedings * * * and afford due process" to all concerned.

**{¶ 34}** As a preliminary matter, we note that the challenge to Husted's reliance on Steiner's affidavit is moot because even without the affidavit, Carroll's testimony was sufficient to support the secretary's decision. And we further note that it is unclear from the record which entity Lowery and Emhoff actually asked the board to subpoena. The hearing transcript reveals that their counsel asked the board to issue a subpoena to OhioGuidestone, *not* to the Cleveland Clinic. The only time they asked the board to issue a subpoena to the Cleveland Clinic was on the third page of their letter in reply to Carroll's response to their protest letters, and that reply letter was submitted the same day as the hearing. Given that the protesters did not renew this request at the hearing itself, we cannot say that the board abused its discretion by failing to grant a continuance and issue the subpoena.

**{¶ 35}** Moreover, Lowery's claim of a due-process violation based on the consideration of the Steiner affidavit, the denial of the protesters' continuance request, and the failure of the board to subpoena the Cleveland Clinic has no merit. As Husted notes in his merit brief, the first requirement for a procedural-due-process claim is an allegation that one has a right or interest that is entitled to due-process protection. *See, e.g., Ludt v. Youngstown*, 7th Dist. Mahoning No. 15 MA 0084, 2016-Ohio-8553, ¶ 21, 24 (holding that a trial court should have granted summary judgment in favor of the defendants on a procedural-due-process claim, in part because the plaintiff had "made no claim or asserted any facts that he had a right or interest that was entitled to due process"). Lowery has not identified a constitutionally protected interest that was compromised.

**{¶ 36}** R.C. 3513.05 does not mandate specific procedures or formalities that a board of elections must follow in hearing a protest. Lowery and Emhoff cite no authority for the proposition that a board of elections (or the secretary) may not consider documents attached to a protest letter or a letter in response to a protest unless those documents are formally moved into evidence at the hearing. And the determination whether to grant a continuance is a matter within the discretion of

the tribunal, *see Harmon v. Baldwin*, 107 Ohio St.3d 232, 2005-Ohio-6264, 837 N.E.2d 1196, ¶ 22-23, and as discussed above, Lowery and Emhoff have not established that the board abused its discretion. We therefore hold that there was no due-process violation.

{¶ 37} Based on the foregoing, we hold that Husted did not abuse his discretion in determining that Carroll's work for the Cleveland Clinic qualified as the practice of law. The final question, then, concerns Husted's determination of the length of time that Carroll worked for the Cleveland Clinic. In her reply brief, Emhoff asserts that Carroll worked at the Cleveland Clinic for only 50 months and 21 days, not the full 52 months for which Husted gave her credit, and she suggests that this is "another example of the inaccurate data that was used by [Husted]." To substantiate this claim, Emhoff attached to her brief an affidavit by Nancy Tichy, senior director of human resources at the Cleveland Clinic Foundation. Tichy signed this affidavit on March 28, 2018, a full month *after* the protest hearing before the board, and two weeks after Husted's decision letter. This evidence is therefore not part of the record, and we cannot say that Husted abused his discretion by failing to consider evidence that was not submitted to him.

### 3. Carroll's work for Legal Aid

{¶ 38} In her written response to the protest, Carroll claimed that from June 2015 to the present, she served as a "Pro Bono Attorney for Legal Aid provid[ing] legal assistance for individuals that are impoverished and going through divorces in Medina County." Husted counted this as the practice of law, writing that, "beginning in 2015, [Carroll] represented clients in a pro bono capacity for a period of at least (14) months."

{¶ 39} At the protest hearing, Carroll testified that during her time at Legal Aid, she handled only three cases that ended in divorce or annulment. The clerk's docket sheets for those cases were introduced into evidence, and they show that at least two of the cases were disposed of fairly quickly:

16

- *Feier v. Nixon*, Medina C.P. case No. 15DR0529: The complaint for divorce was filed on October 9, 2015, and a decree of annulment was entered on March 8, 2016.

- *Perciak v. Perciak*, Medina C.P. case No. 16DR0242: The complaint for divorce was filed on May 24, 2016, and a decree of divorce was entered on August 9, 2016.

The third case, *Hartman v. Hartman*, Medina C.P. case No. 15DR0310, lasted somewhat longer: Carroll first appeared and filed an answer and counterclaim in mid-September 2015, and the case concluded with a divorce decree on June 21, 2016. Thus, the total span of her legal work for Legal Aid was, at most, 11 months (September 2015 to August 2016).

{¶ 40} There is no evidence in the record that Carroll provided additional legal services through Legal Aid or its clients during that timeframe. Carroll was not an employee of Legal Aid. Her statements at the hearing about her work for Legal Aid were vague:

> A:  * * * [W]ere there other questions that I took phone calls and things? Yes.
>
>  * * *
>
> Q: You're talking about more than somebody calling you up on the phone and then you talking to them for a few minutes—
>
> A: Yes.
>
> Q: —and that's the end of it?
>
> A: Yes.

There was no evidence to establish how often she went to the Legal Aid office, how often she answered the phone, or whether in answering the phone, she provided legal advice or merely gathered information for scheduling and intake purposes.

{¶ 41} Emhoff contends that Carroll's time performing legal work for these Legal Aid clients should not count toward her time practicing law, because her work on these cases was sporadic, not continuous. However, R.C. 2301.01 does not require that a candidate for common-pleas-court judge show that she has practiced law *full time* for six years, *State ex rel. Kelly v. Cuyahoga Cty. Bd. of Elections*, 70 Ohio St.3d at 415, 639 N.E.2d 78, and we have never established a minimum threshold for the amount of work a qualifying attorney must perform. Under Emhoff's argument, a new attorney struggling to establish a law practice would not be engaged in the practice of law until she succeeds in attracting some arbitrary number of clients or in maintaining a certain volume of legal work. The record supports the conclusion that for an 11-month period in 2015 and 2016, Carroll maintained attorney-client relationships with three clients, drafted pleadings and appeared in court on their behalf, and presumably met with them at other times to discuss their cases. Husted did not abuse his discretion in concluding that she was engaged in the practice of law throughout this period.

{¶ 42} Nor was it an abuse of discretion for him to conclude that she had practiced law for 14 months, rather than the 11 months described above. Carroll testified that she began providing legal services to Legal Aid clients prior to October 7, 2015, though she was uncertain of the exact date she started. In her written response, she claimed to have started at Legal Aid in June 2015. Using June 2015 as her start date and August 2016 (when the last of her three divorce cases concluded) as her end date would yield a total of 14 months.

{¶ 43} Because these three positions add up to 74 months of legal experience, two more than the minimum amount required, we hold that Secretary

18

Husted did not abuse his discretion in breaking the tie vote in favor of placing Carroll's name on the May 2018 ballot as a judicial candidate.

Claims for writs of mandamus dismissed<br>and writs of prohibition denied.

O'CONNOR, C.J., and O'DONNELL, FRENCH, and DEGENARO, JJ., concur.

KENNEDY and DEWINE, JJ., concur in judgment only.

FISCHER, J., concurs in judgment only, with an opinion.

_____

**FISCHER, J., concurring in judgment only.**

{¶ 44} I agree with the decision to deny the writ of prohibition sought by relators. I write separately, however, to identify an issue that was not raised by the parties in this case but that I think this court should address in the near future. It is not clear to me that this court should be applying an abuse-of-discretion standard in this narrow band of election cases in which the issue is whether certain conduct constitutes the practice of law.

{¶ 45} As the majority opinion notes, in our line of cases concerning what constitutes the "practice of law" for purposes of determining whether a judicial candidate meets the requirements necessary for his or her name to appear on a ballot, we have held, at least implicitly, that a board of elections has the right to determine what constitutes the practice of law. *See, e.g.*, *State ex rel. Kelly v. Cuyahoga Cty. Bd. of Elections*, 70 Ohio St.3d 413, 415, 639 N.E.2d 78 (1994), citing *State ex rel. Carr v. Cuyahoga Cty. Bd. of Elections*, 63 Ohio St.3d 136, 137-138, 586 N.E.2d 73 (1992), citing *State ex rel. Flynn v. Cuyahoga Cty. Bd. of Elections*, 164 Ohio St. 193, 129 N.E.2d 623 (1955). But *Flynn* predates the 1968 Modern Courts Amendment and thus predates the addition of Article IV, Section 2(B)(1)(g) of the Ohio Constitution.

{¶ 46} Article IV, Section 2(B)(1) of the Ohio Constitution expressly states, "The Supreme Court shall have *original jurisdiction* in the following: * * * (g)

Admission to the practice of law, the discipline of persons so admitted, *and all other matters relating to the practice of law.*" (Emphasis added.) Unlike the other grants of original jurisdiction conferred by Article IV, Section 2(B)(1), such as jurisdiction over mandamus actions, this court does not share with any other entity the jurisdiction granted to it in subsection (g). *Compare* Ohio Constitution, Article IV, Section 2(B)(1), *with* Article IV, Section 3(B)(1), *and* Article IV, Section 4(B). Moreover, Article IV, Section 2(B)(1)(g) of the Ohio Constitution uses the broadest—indeed, the completely encompassing—term: "*all* other matters relating to the practice of law." (Emphasis added.)

**{¶ 47}** As the majority also notes, in our line of disciplinary cases addressing the unauthorized practice of law, we have interpreted Article IV, Section 2(B)(1)(g) of the Ohio Constitution to confer on this court "*exclusive jurisdiction* over *all matters related to the practice of law*." (Emphasis added.) *Disciplinary Counsel v. Alexicole, Inc.*, 105 Ohio St.3d 52, 2004-Ohio-6901, 822 N.E.2d 348, ¶ 8. In that same line of cases, we have noted that "[t]his court has *exclusive power* to regulate, control, and *define the practice of law* in Ohio." (Emphasis added.) *Cleveland Bar Assn. v. CompManagement, Inc.*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 39.

**{¶ 48}** Comparing these two lines of cases reveals an apparent inconsistency. It is far from clear to me that under the Ohio Constitution, a board of elections has *any* authority to make the determination whether a candidate engaged in the practice of law. If boards of elections do have authority to make that determination, then as a matter of logic, this court's jurisdiction to make such determination is not exclusive.

**{¶ 49}** Alternatively, assuming arguendo that a board of elections does have the authority to make the determination, should we review that determination for an abuse of discretion or, given the constitutional mandate, should we review it de novo?

**{¶ 50}** As previously noted, the parties did not raise this issue in this case. Moreover, regardless of whether I apply an abuse-of-discretion or a de novo standard of review or whether I determine that the board of elections and secretary of state have no authority to deny a candidate her right to have her name placed on the ballot when that denial requires a practice-of-law-related determination, I reach the same result as the majority in this case. Nonetheless, this court should reconcile its determination that we have *exclusive jurisdiction over all matters relating to the practice of law*, *Alexicole* at ¶ 8, with its decisions applying an abuse-of-discretion standard in cases in which a board of elections or the secretary of state has determined that a candidate has engaged in the practice of law.

_____

Walker & Jocke Co., L.P.A., and Patricia A. Walker, for relator Mary Emhoff.

Patricia F. Lowery, for relator Allen Lowery.

Heidi R. Carroll, respondent, pro se.

S. Forrest Thompson, Medina County Prosecuting Attorney, and Michael K. Lyons and Tom J. Karris, Assistant Prosecuting Attorneys, for respondents the Medina County Board of Elections and its members.

Michael DeWine, Attorney General, and Sarah E. Pierce and Andrew Fraser, Assistant Attorneys General, for respondent Jon Husted.

_____