**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Meyer v. Warren Cty. Bd. of Elections,* Slip Opinion No. 2020-Ohio-4863.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4863

[THE STATE EX REL.] MEYER *v.* WARREN COUNTY BOARD OF ELECTIONS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Meyer v. Warren Cty. Bd. of Elections,* Slip Opinion No. 2020-Ohio-4863.]**

*Elections—Prohibition—Writ of prohibition sought to prevent board of elections from placing tax-levy-reduction measures on the November 2020 ballot— Relator failed to prove that tax-levy-reduction measures did not satisfy the requirements of R.C. 5705.261—Board of elections did not abuse its discretion or disregard applicable law when it denied relator's protest of its decision to place tax-levy-reduction measures on the ballot—Writ denied.*

(No. 2020-1149—Submitted October 6, 2020—Decided October 9, 2020.)

IN PROHIBITION.

————————————

**Per Curiam.**

{¶ 1} In this expedited election case, relator, John Meyer, seeks a writ of prohibition to bar respondent, the Warren County Board of Elections, from placing nine tax-reduction measures on the November 2020 ballot. Meyer has requested

oral argument. For the reasons set forth below, we deny the writ and deny Meyer's request for oral argument.

**The evidence in the record**

{¶ 2} On June 15, 2020, the board received nine separate petitions to reduce nine tax levies. The nine tax levies in question all support the Mason City School District.[1] The petitions sought to reduce each levy by .01 mills.

{¶ 3} Meyer filed with the board a protest against placing the tax-reduction measures on the ballot. On August 14, 2020, the board held a hearing on the protest.

{¶ 4} In his protest letter, Meyer asserted that the proposed tax reductions were an effort "to manipulate the system" to prevent voters from enacting "a meaningful tax reduction." Meyer's counsel elaborated at the protest hearing, claiming that the nine levies, which total 79.74 mills, would be reduced by a "paltry" 0.11 percent. Further, his counsel asserted that because R.C. 5705.261 limits levy-reduction petitions to one every five years, if the board authorized the proposed ballot measures, voters would have to wait five more years before they could place another, more significant reduction on the ballot. In other words, Meyer suggested that the school district itself was promoting a miniscule reduction in order to shield itself for another five years from the possibility of a substantial reduction.

{¶ 5} The board unanimously denied the protest on August 14, 2020. One board member expressed skepticism about the motives of those filing the petitions, "agree[ing] that it's gaming the system and it stinks," but ultimately concluding that "the motives are outside the scope of our authority." The board's chairman elaborated on the latter point, stating that pursuant to R.C. 3501.11(K)(1), the

---

1. The nine levies are (1) a 1968 levy for 16.1 mills, (2) a 1969 levy for 4.9 mills, (3) a 1977 levy for 4.0 mills, (4) a 1978 levy for 6.5 mills, (5) a 1988 levy for 8.6 mills, (6) a 1996 levy for 9.79 mills, (7) a 2001 levy for 9.95 mills, (8) a 2005 levy for 9.94 mills, and (9) a 2020 levy for 9.96 mills.

board's job was only to "review, examine, and certify the sufficiency and validity of petitions."

## Procedural history

{¶ 6} On September 24, 2020, Meyer filed his complaint for a writ of prohibition in this court. Because the case was commenced within 90 days of the November 3, 2020 election, it was automatically subject to an expedited briefing schedule. S.Ct.Prac.R. 12.08(A)(1) and (2). However, along with his complaint, Meyer filed a motion to expedite the already-accelerated briefing schedule, which we granted. __ Ohio St.3d __, 2020-Ohio-4587, __ N.E.3d __. In addition to the briefs and evidence of the parties, we received an amicus brief in opposition to the writ from Casey Moran and Kirsten Lupinski, who reside in Mason and circulated petitions in support of the nine ballot measures.

{¶ 7} On September 29, 2020, Meyer filed a request for oral argument that was not opposed.

## Legal analysis

{¶ 8} Prohibition is the appropriate remedy by which to challenge a board of elections' decision to place a candidate or measure on the ballot. *State ex rel. Emhoff v. Medina Cty. Bd. of Elections*, 153 Ohio St.3d 313, 2018-Ohio-1660, 106 N.E.3d 21, ¶ 13-14. To obtain a writ of prohibition, a relator must establish "the exercise of judicial or quasi-judicial power, the lack of legal authority for the exercise of that power, and the lack of an adequate remedy in the ordinary course of law." *State ex rel. Barney v. Union Cty. Bd. of Elections*, 159 Ohio St.3d 50, 2019-Ohio-4277, 147 N.E.3d 595, ¶ 11. When reviewing the decision of a board of elections, we consider "whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions." *Emhoff* at ¶ 14.

{¶ 9} The first and third elements of the prohibition analysis are not in dispute. "A board of elections exercises quasi-judicial authority when it [decides]

a protest after a mandatory hearing that includes sworn testimony." *Barney* at ¶ 12. "R.C. 3509.39(A) requires a board of elections to conduct a quasi-judicial hearing on a petition protest." *Id.* The board concedes that it exercised quasi-judicial authority when it conducted an evidentiary hearing on Meyer's protest and denied it. Likewise, the board concedes that given the proximity of the election, Meyer does not have an adequate remedy in the ordinary course of law.

{¶ 10} The remaining question, then, is whether the board lacked legal authority for its actions. Meyer has not alleged fraud or corruption. Instead, he alleges that the board exercised its power without legal authority when it interpreted R.C. 5705.261 in a manner that allowed the levy-reduction measures to be placed on the ballot.

{¶ 11} We have recognized that R.C. 5705.261 establishes five requirements for petitioners seeking to submit levy decreases to the voters: (1) the petition must propose the question of a decrease of an increased rate of levy approved by the voters for a continuing period of time, (2) the petition must be timely filed, (3) the petition must state the amount of the proposed decrease, (4) the petition must be signed by a sufficient number of qualified electors, and (5) only one petition may be filed during each five-year period after the election at which the voters approved the rate increase for a continuing period. *State ex rel. Choices for South-Western City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 37. Meyer has not challenged the timeliness of the petition, the sufficiency of the signatures, or the adequacy of the information in the petitions. Nor does he allege that more than one reduction petition has been filed regarding any of the levies during the relevant five-year period.

{¶ 12} His objection concerns the first requirement of R.C. 5705.261 that a petition propose a levy decrease. In *Anthony*, we applied "the rules of grammar and common usage" to conclude that a 100 percent reduction of a levy—"to 0.0 mills from 9.7 mills"—would not be a *decrease*, but rather a *repeal*. *Id.* at ¶ 38-41.

4

But while there is a maximum amount that a reduction cannot exceed without becoming a repeal, the statute does not create a minimum threshold that a reduction must satisfy. The plain language of R.C. 5705.261 requires only that a petition call for some designated reduction, which these petitions do.

{¶ 13} Meyer concedes that the proposed decreases of .01 mills satisfy the strict language of R.C. 5705.261, but he contends that construing the statutory language in a way that allows for a miniscule decrease would lead to absurd results that the General Assembly never intended. Specifically, he asserts that a ruling in the board's favor would make it possible for a school board to shield its tax levies from reduction in perpetuity by instituting regular slight reductions. And he asserts that courts have an obligation to construe statutes in such a way as to avoid absurd results.

{¶ 14} Meyer's reliance on the absurdity doctrine is unavailing. "The absurd-result exception to the plain-meaning rule of [statutory] construction" applies "only [to] those cases in which the plain language of a statute results in an *obviously unintended result*." (Emphasis added.) *State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, ¶ 26 (plurality opinion). Moreover,

> even if the plain-language application of a statute would yield an absurd result, the absurdity doctrine does not permit a court to correct the absurdity unless it is "reparable by changing or supplying a particular word or phrase whose inclusion or omission was obviously a technical or ministerial error * * *. The doctrine does not include substantive errors arising from a drafter's failure to appreciate the effect of certain provisions."

(Ellipsis added in *Parker*.) *State v. Parker*, 157 Ohio St.3d 460, 2019-Ohio-3848, 137 N.E.3d 1151, ¶ 28 (lead opinion), quoting Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 238 (2012).

{¶ 15} Thus, the absurdity doctrine does not apply in the present case for two reasons. First, the existence of an undesirable application of a statute is not necessarily evidence of absurdity. And second, the problem that Meyer complains of, assuming it exists, may be corrected only by the legislature. His position is that a board of elections should decide whether a proposed tax-levy reduction is large enough to be meaningful, and hence, qualify for the ballot. But the statutory duties of a board of elections, as spelled out in R.C. 3501.11(K), do not include reviewing and rejecting petitions on such grounds. Likewise, it is not the judiciary's role to decide what is essentially a policy question. *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 113 ("the General Assembly is responsible for * * * making policy decisions").

{¶ 16} Meyer has repeatedly conceded that he has no legal basis beyond the absurdity doctrine to challenge the board's decision to place the measures on the ballot. In his protest letter, he wrote, "I do understand that the board is not permitted to disallow the ballot issues from being put on the ballot." And at the protest hearing, his counsel assured the board that "[n]o one's suggesting" the statutory requirements for ballot access were not met. Because the statutory requirements were met, as Meyer concedes, the board did not abuse its discretion or disregard applicable law by placing the petitions on the ballot.

{¶ 17} We therefore deny the writ of prohibition.

{¶ 18} In addition, we deny Meyer's request for oral argument. We will exercise our discretion to grant a request for oral argument when a case "involves a matter of great public importance, complex issues of law or fact, a substantial constitutional issue, or a conflict among Ohio's courts of appeals." *State ex rel. Ullmann v. Klein*, __ Ohio St.3d __, 2020-Ohio-2974, __ N.E.3d __, ¶ 21, citing

*State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 15.  Meyer has offered no reason for this court to schedule oral argument.  The facts of the case are straightforward and undisputed.  The case does not present any novel questions of law.  And finally, the urgency of the election calendar militates against further delay.  For these reasons, we deny the request for oral argument.

### Conclusion

{¶ 19} For the reasons discussed, we deny the writ of prohibition and deny the request for oral argument.

Writ denied.

O'CONNOR, C.J., and KENNEDY and STEWART, JJ., concur.

DEWINE, J., concurs, with an opinion joined by KENNEDY, J., and joined except for paragraph 21 by FISCHER, J.

FRENCH, J., concurs in judgment only, with an opinion joined by FISCHER and DONNELLY, JJ.

_____

**DEWINE, J., concurring.**

{¶ 20} What happened here is outrageous.  A group put a series of tax-levy "reductions" on the ballot not for the purpose of lowering taxes in any meaningful way, but instead for the purpose of preventing a future attempt to reduce taxes.  The so-called tax reduction here is trivial: the owner of a $250,000 home will save $7.08 in taxes.  But by placing this sham tax reduction on the ballot, the group seeks to exploit a provision of Ohio law that allows only one tax-reduction measure to be proposed every five years.  R.C. 5705.261.  Though the majority dances around the issue, we ought to call this what it is: a cynical contrivance to deprive the voters of their right to control local property-tax levels.

{¶ 21} The majority is right, however—there is no law against what the group did, though there probably should be.  This court does not have the authority

to issue a writ of prohibition in this case because the Warren County Board of Elections did not violate a clear legal duty when it voted to put the measures on the ballot. Thus, I must reluctantly concur in the majority's judgment. Our job is to apply the law as it is written, not as we think it should be written.

{¶ 22} So if voters want a remedy for this ploy, they must look elsewhere than the court system. They might ask the legislature to close the loophole in R.C. 5705.261 that is being exploited here. Or if they agree with relator's claim that the school board is behind this attempt to disenfranchise future voters, they can seek their remedy at the next school-board election.

{¶ 23} This is an opinion that I have to close by just saying, *sorry, I wish we could do more here, but the law just won't let us.*

KENNEDY, J., concurs in the foregoing opinion.

FISCHER, J., concurs in the foregoing opinion except for paragraph 21.

_____

**FRENCH, J., concurring in judgment only.**

{¶ 24} I agree with the majority's judgment denying the request of relator, John Meyer, for a writ of prohibition to prevent respondent, the Warren County Board of Elections, from placing nine tax-reduction measures on the November 3, 2020 ballot. But I would reach that outcome for reasons different from the ones relied upon by the majority. I would conclude that laches bars Meyer's claim because he waited too long to file his complaint. In election cases, "relators must act with the utmost diligence." *State ex rel. Syx v. Stow City Council*, __ Ohio St.3d __, 2020-Ohio-4393, __ N.E.3d __, ¶ 11. By waiting over five weeks after the board denied his protest to file his complaint, Meyer failed to act with the requisite diligence.

{¶ 25} "The elements of a laches defense are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the

8

other party." *State ex rel. Carrier v. Hilliard City Council*, 144 Ohio St.3d 592, 2016-Ohio-155, 45 N.E.3d 1006, ¶ 8.

{¶ 26} The record here establishes that Meyer's delay was unreasonable. The board denied Meyer's protest on August 14, 2020, affirming its decision to place the nine challenged tax-reduction measures on the ballot. Meyer filed his complaint 41 days later, on September 24. We have found unreasonable delay in other election cases in which the relators filed their complaints with much greater promptness than Meyer. *See, e.g., Syx* at ¶ 11 (22 days); *State ex rel. Landis v. Morrow Cty. Bd. of Elections*, 88 Ohio St.3d 187, 189, 724 N.E.2d 775 (2000) (22 days); *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995) (17 days).

{¶ 27} Moreover, Meyer's filing delay resulted in prejudice to the board by shortening its time to respond to Meyer's claims. We have held that the element of prejudice is satisfied when the delay causes the case to become an expedited election case, which restricts the time the board of elections has to prepare and defend the case. *State ex rel. Chillicothe v. Ross Cty. Bd. of Elections*, 123 Ohio St.3d 439, 2009-Ohio-5523, 917 N.E.2d 263, ¶ 15-16. By operation of S.Ct.Prac.R. 12.08, this court expedites the briefing schedule for election cases filed within 90 days before the election. The 90th day before this year's election was August 5, 2020. Thus, even if Meyer had filed his complaint immediately following the board's decision, the court would have automatically expedited the briefing in this case. But given the late date of his filing, even Meyer recognized that the normal expedited briefing schedule might not be sufficient to ensure a timely decision in the case. He therefore requested and received an acceleration of the briefing schedule. As a result, the board had one and a half days to file its merit brief instead of the customary three days. *See* __ Ohio St.3d __, 2020-Ohio-4587, __ N.E.3d __.

{¶ 28} Meyer argues that this court should excuse his delay because he waited for the board to provide a hearing transcript—which he claims was

"indispensable"—before filing his complaint. In his brief, Meyer states that after the August 14 hearing, he promptly requested copies of the hearing transcript and the nine challenged ballot measures, but that despite multiple follow-up calls, he did not receive the materials until September 22. Meyer filed suit on September 24. Meyer argues that the board cannot invoke an equitable defense such as laches due to its own delay. But aside from the assertions in his brief, Meyer has submitted no evidence to prove his chronology of events.

{¶ 29} Even assuming the truth of Meyer's assertions as to the timing of events, waiting for the transcript does not excuse his delay. We have consistently held that waiting for a transcript of a board-of-elections hearing before filing suit does not justify a relator's delay in seeking extraordinary relief in an election case absent a showing that the transcript was necessary. *See Chillicothe*, 123 Ohio St.3d 439, 2009-Ohio-5523, 917 N.E.2d 263, ¶ 11 (finding "no legitimate excuse" for filing delay because the relator did not "need to wait for the completion of a transcript of the board hearing" to file its action); *Polo*, 74 Ohio St.3d at 145, 656 N.E.2d 1277 ("There is no indication that [the relator] needed to wait for a hearing transcript prior to seeking a writ of prohibition").

{¶ 30} Here, Meyer did not need the transcript in order to file his action. The fact that the board denied the protest was not in dispute. Meyer and two of his attorneys attended the protest hearing and therefore did not need the transcript to review the basis for the board's decision. And Meyer could have established the board's stated reasoning for rejecting his protest by affidavit testimony from people who attended the hearing. Given the urgency of this matter, Meyer should have realized that it was unreasonable to continue waiting for more than five weeks and should have filed his action without the transcript.

{¶ 31} In *State ex rel. Coughlin v. Summit Cty. Bd. of Elections*, 136 Ohio St.3d 371, 2013-Ohio-3867, 995 N.E.2d 1194, we held that laches did not bar the relator's claim and noted that there may be circumstances in which a delay in filing

is reasonable if a relator is "diligently trying to obtain documents from a board of elections." *Id*. at ¶ 13. In that case, the relator requested the transcript the day after the board's hearing, and the board provided the transcript roughly two weeks later. *Id*. at ¶ 14. But our laches analysis in *Coughlin* did not focus on the time span between the board's hearing and the filing of the relator's complaint. Rather, the board argued that laches barred the relator's claim because he waited five business days after *receiving* the transcript to file suit. *Id*. at ¶ 10. He picked up the transcript on August 2, 2013, but did not file suit until August 8, 2013, which was the 90th day before the November 5, 2013 election. *Id*. The board claimed that it suffered prejudice because the relator, by waiting five business days to file his complaint, caused the case to become an expedited-election matter. *Id*. at ¶ 11. In those specific factual circumstances, we concluded that laches did not bar the relator's claim because he "acted with diligence by promptly demanding a certified transcript and *filing suit five business days after the transcript became available*." (Emphasis added). *Id*. at ¶ 15.

{¶ 32} *Coughlin* therefore does not stand for the proposition that waiting on a transcript from the board of elections will excuse a relator's delay in filing a complaint in an election matter. And our longstanding precedent does not support Meyer's attempt to shift the blame to the board of elections for his filing delay. Rather, as we stated in *Polo* and *Chillicothe*, waiting for a transcript of the board hearing before filing suit does not justify a relator's delay in seeking extraordinary relief in an election case absent a showing that the transcript was necessary. While I acknowledge this court's preference to resolve cases on their merits, *Coughlin* at ¶ 15, Meyer asks too much in demanding an expedited resolution to his claim after sitting on his rights for over five weeks. I would therefore deny Meyer's complaint for a writ of prohibition as barred by laches.

FISCHER and DONNELLY, JJ., concur in the foregoing opinion.

————————————

Jack A. Pook, Joseph Paley, and Timothy A. Campbell, for relator.

David P. Fornshell, Warren County Prosecuting Attorney, and Keith W. Anderson, Assistant Prosecuting Attorney, for respondent.

Frost Brown Todd, L.L.C., and Brodi J. Conover, urging denial of the writ for amici curiae, Casey Moran and Kirsten Lupinski.

————————————