[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio Power Co. v. Burns*, Slip Opinion No. 2022-Ohio-4713.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4713

OHIO POWER COMPANY, APPELLANT, *v*. BURNS ET AL, APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio Power Co. v. Burns*, Slip Opinion No. 2022-Ohio-4713.]

*Necessity of easements sought by agency through eminent domain—Applicability of necessity presumptions in R.C. 163.09(B)(1)—The term "appropriation" in R.C. 163.09(B)(1) means the appropriation of the specific property, or right therein, that is subject to the taking by the agency as set forth in its petition filed under R.C. 163.05—Agency did not "abandon" appropriation proceedings under R.C. 163.21(A) when it conceded that a term in proposed easements was unnecessary.*

(No. 2021-1168—Submitted August 2, 2022—Decided December 29, 2022.)

APPEAL from the Court of Appeals for Washington County,

Nos. 20CA19 through 20CA22, 2021-Ohio-2714.

_____

**FISCHER, J.**

{¶ 1} This discretionary appeal involves a dispute between appellant, Ohio Power Company, a public utility and subsidiary of American Electric Power, and appellees, Michael and Misty Burns, Ronald and Barbara Bohlen, Jeffrey and Holly Dexter, and Ryan and Denay May ("the landowners"), over the necessity of easements sought by Ohio Power through eminent domain to upgrade electric-transmission lines. The main issue in this case is whether Ohio Power, a private agency authorized to appropriate property under R.C. 163.01(B) and (C), was entitled to any of the necessity presumptions set forth in R.C. 163.09(B)(1). And the secondary issue is whether the landowners are entitled to fees associated with Ohio Power's concession that one of the easement terms, the right to install distribution lines, was not necessary.

{¶ 2} We hold that the term "appropriation" in R.C. 163.09(B)(1) means the appropriation of the "parcel or contiguous parcels in a single common ownership, or interest or right therein," as identified in the petition filed by an agency under R.C. 163.05. Because in this case neither Ohio Power's board of directors ("Power Board") nor the Ohio Siting Board ("Siting Board") reviewed the appropriations (i.e., the proposed easement terms), Ohio Power was not entitled to a rebuttable presumption under R.C. 163.09(B)(1)(a) or an irrebuttable presumption under R.C. 163.09(B)(1)(c). However, we hold that Ohio Power was entitled to a rebuttable presumption under R.C. 163.09(B)(1)(b) because it provided evidence of the necessity for the appropriations. Therefore, we agree with the appellate court's determination that the trial court erred in holding that the presumptions under R.C. 163.09(B)(1)(a) and (c) apply, and we agree with the appellate court's determination that the trial court needs to make a separate necessity finding with regard to each easement term. Thus, we affirm the court of appeals' judgment reversing the trial court's determination that the appropriations are necessary. We agree with the appellate court that the matter must be remanded to the trial court

but do not agree that another hearing is required. Rather, we remand the cause to the trial court for it to consider the appropriations and separately determine whether they are necessary.

{¶ 3} Additionally, we hold that the landowners are not entitled to the fees associated with abandonment of appropriation proceedings under R.C. 163.21(A), because Ohio Power did not abandon the appropriation proceedings when it conceded that the distribution-line term in the easement was unnecessary. Any arguments concerning an award of fees under R.C. 163.09(G) and 163.21(B) with regard to the distribution-line term were not raised below by the landowners and were thus forfeited. The landowners, therefore, are not entitled to fees under R.C. 163.21(B), and we reverse the portion of the Fourth District Court of Appeals' judgment holding otherwise.

{¶ 4} We affirm the appellate court's judgment in part and reverse it in part and remand the cause to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. The landowners contest the necessity of easements sought by Ohio Power

{¶ 5} Sometime in 2017, Ohio Power determined that ten miles of electric-transmission lines in Washington County had aged significantly and that the current lines could no longer support the electrical load necessary to adequately service the community. Ohio Power designed a project to replace the aging 23-kilovolt electric-transmission system with a new 138-kilovolt electric-transmission system. However, to successfully complete the project, Ohio Power needed supplemental easements from various property owners, including the landowners in this case.

{¶ 6} When negotiations with the landowners failed, Ohio Power sought supplemental easements by eminent domain under R.C. 163.05. Ohio Power filed verified petitions for appropriation against each of the landowners. In each verified petition, Ohio Power identified the need for the supplemental easement and the

rights sought in relation to the construction and maintenance of the new electric-transmission system.

{¶ 7} The landowners opposed the easements in general, alleging that the appropriations were overly broad and unnecessary, and they challenged the need for several of the easement terms specifically, including the need for distribution lines.

### B.  The trial court holds a necessity hearing

{¶ 8} The Washington County Court of Common Pleas held a necessity hearing, at which Ohio Power's lead transmission-right-of-way agent for the project, Kelly Sue Rentschler, explained the need for the project.  She said that the wooden poles supporting the current electric-transmission lines present a safety hazard to the technicians and the public and that the existing 23-kilovolt network was no longer strong enough to support the electrical load required in the area. Rentschler noted that between 2015 and 2017, there were over 30 power outages on that line.  So Ohio Power sought to upgrade the system entirely, by replacing the wooden-pole system with a steel-pole system, which would require less maintenance and be more reliable in the long run, and by increasing the electrical-voltage capacity from 23 to 138 kilovolts, to ensure that the new line could supply adequate power to Marietta and the surrounding township.

{¶ 9} Rentschler then explained Ohio Power's approach to acquiring the rights needed for the project.  She said that generally, Ohio Power would seek easement terms to acquire more rights than were necessary for the project.  But if the matter proceeded to litigation, then Ohio Power would change the easement terms to only those that were necessary.  Rentschler maintained that the easements at issue in this case were prepared with reference to the project plans and specifications.  Rentschler also noted that the easements in this case mirrored an easement that had been proposed by the landowners' counsel in another necessity challenge in a different county.

**{¶ 10}** On direct and cross-examination, Rentschler explained the need for many of the easement terms: (1) the right to construct and maintain the transmission lines, (2) the right to install a 138-kilovolt transmission line, (3) the right to replace the poles used to support the transmission line, (4) the right to install internal communication lines, (5) the right to install distribution lines, (6) the right to expand the existing easement corridor from 80 to 100 feet, (7) the right to create and use access roads, (8) the right of reasonable ingress and egress to access the transmission lines, (9) the right to cut, trim, and use herbicides within the easement area and in the "tree protection zone," (10) the provision that if Ohio Power fails to exercise its rights under the easement, that failure will not constitute an abandonment or a waiver of its rights under the easement, (11) the right of the landowners to use the easement land, and (12) Ohio Power's duties to the landowners. Of all the easement terms discussed, Rentschler testified that only one of them was unnecessary to the project: the right to install distribution lines. Ohio Power agreed to remove that provision from the easements, but it did so only after the landowners challenged its necessity.

**{¶ 11}** Additionally, Ohio Power provided evidence that the Siting Board had approved the project, finding it was needed due to "reliability issues caused by the age of the existing 23[-kilovolt] transmission system" and that the project "would serve the public interest, convenience, and necessity." However, the Siting Board did not review the individual easements or property rights in question in its necessity determination.

**{¶ 12}** Ohio Power also presented evidence that the Power Board had passed a resolution in December 2019 recognizing the necessity of acquiring easements in connection with the project. However, the Power Board had not reviewed any individual easements in connection with the project and instead, through its resolution, delegated to the officers, engineers, and other agents of the company the authority to acquire individual easements to complete the project.

**{¶ 13}** After the necessity hearing, the parties submitted briefs with proposed findings of fact and conclusions of law.

### C. The trial court finds that the easements are necessary

**{¶ 14}** The trial court ruled in favor of Ohio Power, finding that the project was necessary and that each easement term other than the distribution-line term was also necessary. The court determined that Ohio Power was entitled to each presumption set forth in R.C. 163.09(B)(1). It held:

- Ohio Power was entitled to an irrebuttable presumption under R.C. 163.09(B)(1)(c) because the Siting Board had expressly concluded that the project will "serve the public interest, convenience, and necessity."

- Ohio Power was entitled to a rebuttable presumption under R.C. 163.09(B)(1)(a) because the Power Board had declared the necessity for the appropriation of the easements.

- Ohio Power was entitled to a separate rebuttable presumption under R.C. 163.09(B)(1)(b) because Rentschler had testified that the appropriations sought by Ohio Power were necessary.

**{¶ 15}** The trial court said that even if it had not found the irrebuttable presumption under R.C. 163.09(B)(1)(c) applicable, Ohio Power had satisfied its burden to prove under R.C. 163.09(B) that the easement terms were necessary. The court explained that the landowners' challenge to the necessity of the appropriations was primarily limited to their cross-examination of Rentschler. Without analyzing each term separately, but noting that it was persuaded by Rentschler's testimony, the court concluded that all the easement terms were necessary. Additionally, the court found that Ohio Power is "in the best position to determine what is necessary to construct, operate and maintain an electric transmission line now and for many decades into the future" and that "based on the evidence presented * * * none of the terms sought by [Ohio Power] go beyond what is necessary to safely and reliably operate a high voltage electric transmission line." It determined that the landowners

6

had failed to rebut the presumptions applicable under R.C. 163.09(B)(1)(a) and (b) regarding the necessity of the appropriations.

{¶ 16} The court also held that Ohio Power's withdrawal of the distribution-line rights from its proposed easements did not constitute an "abandonment" of "appropriation proceedings" under R.C. 163.21 and thus the landowners were not entitled to the fees associated therewith. The court then set the matter for a compensation trial.

### D. The court of appeals reverses the trial court's judgment and remands the cause for additional proceedings

{¶ 17} The landowners appealed to the Fourth District. The appellate court rejected the trial court's determination that Ohio Power was entitled to the rebuttable presumption under R.C. 163.09(B)(1)(a) and the irrebuttable presumption under R.C. 163.09(B)(1)(c), because neither the Siting Board nor the Power Board had approved the specific appropriations against the landowners. Additionally, the court of appeals held that the trial court had erred in its analysis under R.C. 163.09(B)(1)(b) and its determination of the necessity of the easement terms, because it had failed to engage in the review required by R.C. 163.09(B) and by *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 115. 2021-Ohio-2714, 176 N.E.3d 778, ¶ 55-56. The appellate court observed that the trial court had "summarily stated that it was 'persuaded by Ms. Rentschler's testimony that all of the terms of the proposed Easements are necessary' " and that the trial court had not reviewed each of the challenged easement terms and made a separate necessity finding as to each. *Id.* at ¶ 55. The appellate court criticized the trial court for its " 'artificial judicial deference' " to the utility company—a deference that had been criticized by this court in *Norwood*—when it found that Ohio Power, as the public utility, is in the best position to determine what appropriations are necessary. 2021-Ohio-2714, 176 N.E.3d 778, at ¶ 55, quoting *Norwood* at ¶ 61. The court of appeals said that the trial court had a duty to

determine the legal question of whether the extent of the taking was excessive. Thus, the appellate court reversed the trial court's judgment related to its R.C. 163.09 determinations and remanded the matter to the trial court to hold another R.C. 163.09(B) hearing to determine whether the specifically contested terms of the easement are necessary.

{¶ 18} The appellate court also held that Ohio Power had lost the right to appropriate easement rights for distribution lines because the landowners had raised a successful challenge to that term of the easement in their answers and at the necessity hearing. The court agreed with the landowners that their right to exclude the distribution lines from their properties was a separate "stick" in their bundle of property rights. The court determined that although Ohio Power had conceded that the easement, as proposed, was broader in scope than necessary, it had not voluntarily abandoned the distribution-line rights under R.C. 163.21(A). Thus, the appellate court held that there was no need to determine whether there was a partial abandonment of the appropriation proceedings under R.C. 163.21(A). Nevertheless, it held that since Ohio Power was not entitled to appropriate the distribution-line rights and had removed that term from the easements, the landowners were entitled to the costs associated with their defense of that right under R.C. 163.21(B).

**E. We accept jurisdiction over Ohio Power's discretionary appeal**

{¶ 19} Ohio Power filed a discretionary appeal challenging the Fourth District's judgment. We accepted jurisdiction and granted review of Ohio Power's three propositions of law:

Proposition of Law No. 1: A trial court determines the necessity of an appropriation of an easement by a preponderance of the evidence, subject to the presumptions set forth in R.C. 163.09(B). If a landowner specifically denies that the easement is necessary, the

rebuttable presumptions set forth in R.C. 163.09(B)(1)(a) and R.C. 163.09(B)(1)(b) may be rebutted only upon the landowner's presentation of evidence of bad faith, abuse of discretion, or improper purpose by the agency.

Proposition of Law No. 2: A certificate from the Ohio Power Siting Board declaring that a utility project will "serve the public interest, convenience, and necessity" raises an irrebuttable presumption under R.C. 163.09(B)(1)(c) that the appropriation sought by the public utility for that project is necessary.

Proposition of Law No. 3: Modification of easement terms in an appropriation proceeding, whether done voluntarily or by court order, does not trigger the provisions of R.C. 163.09(G), R.C. 163.21(A), or R.C. 163.21(B) unless the modification fundamentally changes the appropriation and prejudices the landowner.

*See* 165 Ohio St.3d 1543, 2022-Ohio-397, 180 N.E.3d 1179.

## II. ANALYSIS

### A. Necessity presumptions under R.C. 163.09(B)(1)

{¶ 20} The main dispute in this case is whether Ohio Power is entitled to any of the three necessity presumptions under R.C. 163.09(B). Pursuant to R.C. 163.09(B)(1), Ohio Power must show by a preponderance of the evidence that the taking of the property is necessary, unless one of three circumstances in division (a), (b), or (c) has occurred. Under division (a), Ohio Power is entitled to a rebuttable presumption of necessity if the Power Board declared by resolution "the necessity for the appropriation." R.C. 163.09(B)(1)(a). Under division (b), Ohio Power is entitled to a rebuttable presumption of necessity if it presented "evidence of the necessity for the appropriation." R.C. 163.09(B)(1)(b). And under division (c), Ohio Power is entitled to an irrebuttable presumption of necessity if a state or federal

regulatory authority, such as the Siting Board, approved "of [the] appropriation." R.C. 163.09(B)(1)(c). Thus, to be entitled to any of the presumptions, the relevant entities must determine the necessity of the appropriation.

*1. "Appropriation" under R.C. 163.09(B)(1) means the appropriation of the specific property that is subject to the taking by the agency as set forth in its petition filed under R.C. 163.05*

**{¶ 21}** To resolve this case, we must determine the meaning of "appropriation" as that term is used in R.C. 163.09(B)(1). Ohio Power argues that the term "appropriation" must be interpreted broadly to mean the "project" or "taking" generally and that it does not include individual easement terms. In support, Ohio Power points us not to the statute at issue but to other statutes in R.C. Chapter 163. The landowners argue, however, that "appropriation" means the appropriation of the easement rights sought by the petition. They maintain that this interpretation is supported by the plain language of R.C. 163.09(B)(1). We agree with the landowners.

**{¶ 22}** The property rights of an individual are fundamental rights, and "the bundle of venerable rights associated with property is strongly protected in the Ohio Constitution and must be trod upon lightly, no matter how great the weight of other forces." *Norwood*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, at ¶ 38. The state, however, may seize private property when it is necessary for public use. *Id.* at ¶ 39, 41. To quell the tension between these two rights, the courts' role is to review the state action "to ensure that the state takes *no more than that necessary* to promote the public use." (Emphasis added.) *Id.* at ¶ 69, citing *Buckingham v. Smith*, 10 Ohio 288, 296-297 (1840).

**{¶ 23}** In determining the meaning of "appropriation" in R.C. 163.09(B)(1), our main concern is to give effect to the plain meaning of the text of the statute. *See State ex rel. Bohlen v. Halliday*, 164 Ohio St.3d 121, 2021-Ohio-194, 172 N.E.3d 114, ¶ 16. The Ohio General Assembly did not define the term "appropriation" in

R.C. Chapter 163. *See* R.C. 163.01. When a statutory term is not defined by statute, we apply the term's common meaning. *Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, 91 N.E.3d 716, ¶ 25. The verb "appropriate" means "to take exclusive possession of," "to set apart for or assign to a particular purpose or use," or "to take or make use of without authority or right." *Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/appropriate (accessed Dec. 16, 2022) [https://perma.cc/LS44-JLCR]. Additionally, *Black's Law Dictionary* has defined "appropriation" to mean "the exercise of control over property, esp. without permission; a taking of possession." *Id.* at 127 (11th Ed.2019). Thus, "appropriation" refers to the object that is subject to the taking—the specific property being appropriated by the agency. *See* R.C. 163.05, 163.08, and 163.09(B)(1).

{¶ 24} We know that the term "appropriation" means the appropriation of the specific property sought to be appropriated by the agency; it does not mean the project or the taking in general, given the restrictions on an agency's right to appropriate. R.C. 163.09(B)(1) comes into play only when (1) the agency has filed a petition under R.C. 163.05 against a landowner to appropriate a "parcel or contiguous parcels in a single common ownership, or interest or right therein," and (2) the landowner has filed an answer in response to that petition denying the "necessity for the appropriation" under R.C. 163.08. *See* R.C. 163.09(B)(1). Reading R.C. 163.09(B)(1) as the third step in the petition process, "appropriation" must mean the "appropriation of each parcel or contiguous parcels in a single common ownership, or interest or right therein," R.C. 163.05. Otherwise, the term "appropriation" would not make sense within the context of R.C. 163.05, 163.08, or 163.09. This interpretation is consistent with our understanding that property is a "bundle of sticks," "a collection of individual rights which, in certain combinations, constitute property," *State ex rel. New Wen, Inc. v. Marchbanks*, 159 Ohio St.3d 15, 2020-Ohio-63, 146 N.E.3d 545, ¶ 24.

{¶ 25} This conclusion is also supported by many other provisions in the statutory scheme. *See* R.C. 163.02(D)(2) (the instrument by which the agency acquires the real property must include "[a] statement of the purpose of the appropriation as provided with the appropriation petition"); R.C. 163.02(D)(3) (the instrument by which the agency acquires the real property must include a statement that the prior owner possesses a right of repurchase if the agency decides not to use the property for the purpose stated in the appropriation petition); R.C. 163.02(E) (R.C. Chapter 163 does not preclude any person from voluntarily conveying property to an agency that is considering appropriating the property or that offered to purchase the property under threat of appropriation); R.C. 163.05 (an agency may commence appropriation proceedings "by filing a petition for appropriation of each parcel or contiguous parcels in a single common ownership, or interest or right therein"); R.C. 163.05(A) (a petition for appropriation shall contain a "description of each parcel of land or interest or right therein sought to be appropriated"); R.C. 163.05(B)(1) (a petition for appropriation shall contain a "statement that the appropriation is necessary"); R.C. 163.05(B)(2) (if the property being appropriated is a blighted parcel that is being appropriated pursuant to a redevelopment plan, then the statement in the petition for appropriation must show the basis for the finding of blight and must support a finding that the parcel is a part of the blighted area); R.C. 163.05(C) (a petition for appropriation shall contain a statement of the purpose of the appropriation); R.C. 163.05(D) (a petition for appropriation shall contain a "statement of the estate or interest sought to be appropriated); R.C. 163.05(G) ("[i]n the event of an appropriation where the agency would require less than the whole of any parcel containing a residence structure and the required portion would remove a garage" and there is not sufficient land to replace the garage, "the appropriation shall be for the whole parcel"); R.C. 163.08 (an owner may file an answer to a petition and if the owner denies the necessity of the appropriation in the answer, then a court must resolve the agency's right to make the appropriation and the necessity of the

12

appropriation); R.C. 163.12 (mentions a "view of the premises to be appropriated," which would be a part of the appropriation); R.C. 163.14(B) (mentions "the property appropriated" in reference to the assessment of compensation for the appropriation); R.C. 163.20 ("agency may appropriate * * * any property in which an interest has been appropriated, in order to perfect title in itself"); R.C. 163.21 (if the agency has not "taken possession of property that is appropriated," an agency may abandon the appropriation proceedings); R.C. 163.211 (owner can repurchase the appropriated property if the agency does not use it for the purpose stated in the appropriation petition). Indeed, reading "appropriation" to mean anything other than the appropriation of the specific property right sought to be acquired by the agency from the landowner would be inconsistent with the concept of eminent domain and contrary to the protection of the individual's property rights.

{¶ 26} Ohio Power argues, however, that this interpretation is too narrow. It maintains that the sample form found in R.C. 163.041 shows that "appropriation" can also mean "project." The General Assembly requires agencies to provide notice to each property owner prior to initiating appropriation proceedings, and the notice must be "substantially" the same as the form provided in R.C. 163.041. Twice, the notice form crafted by the General Assembly refers to whether "the project is necessary": (1) "In a court proceeding, you may disagree with any of the following: whether *the project is necessary*" and (2) "If we go to court to determine whether *the project is necessary* or for a public use, and the court decides that *it* is not necessary or not for a public use, the judge shall award you your full amount of attorney's fees, costs, and expenses." (Emphasis added.) R.C. 163.041. When the notice form is read in the context of the petition process set forth in R.C. 163.05, 163.08, and 163.09, the term "project" appears where the term "appropriation" should be. Ohio Power argues that because, according to the form, the agency is required to notify property owners only that it has the burden to prove that "the project" is necessary, then, where "necessity

for the appropriation" is used in R.C. 163.09(B)(1), the term "appropriation" must mean "project."

{¶ 27} While this does add a layer of confusion to the process generally, the language in the sample notice form in R.C. 163.041 does not change the meaning of "appropriation" in R.C. 163.09(B)(1). It is doubtful that a notice form, which can be altered by the agency, could affect the plain language of a separate statute so significantly that it alters the meaning of a term within that separate statute altogether. Moreover, when we look at the rest of the notice form in R.C. 163.041 to determine the meaning of "appropriation," it too supports the conclusion that "appropriation" refers to the taking of the property rights by the agency as identified in the appropriation petition. The notice distinguishes between "the project" and "the property or easement to be acquired" from the property owner. *Id.* The notice informs the property owner that if the property owner and the agency cannot agree on the terms, then the agency "has the right to file suit to acquire the (property) (easement) by eminent domain in the county in which the property is located." *Id.* This acquisition of property or easement would be the "appropriation." So, applying that meaning, "necessity of the appropriation" would mean the "necessity of the acquisition of the property or easement." This supports our conclusion that "appropriation" means the appropriation of the specific parcel, or the interest or right therein, sought by the agency in its verified petition filed under R.C. 163.05.

{¶ 28} Therefore, we hold that the term "appropriation" as used in R.C. 163.09(B)(1) means the appropriation of the individual property, or the interest or right therein, that is sought to be taken by the agency, not the project in its entirety.

*2. Ohio Power is entitled to a rebuttable presumption under R.C. 163.09(B)(1)(b)*

*only*

{¶ 29} The presumptions in R.C. 163.09(B)(1)(a) and (c) are limited to the scope of the necessity findings made by the relevant entities—the Siting Board and the Power Board in this case. Here, both the Siting Board and the Power Board

approved only the project, not the individual appropriations. Had the landowners challenged only the necessity of the overall project in contesting the easements, then the presumptions under R.C. 163.09(B)(1)(a) and (c) might apply. But because the landowners challenged the necessity of the individual easement terms, which the Power Board and Siting Board never reviewed, those presumptions cannot apply.

{¶ 30} Ohio Power does not dispute that neither the Siting Board nor the Power Board reviewed the individual appropriations in this case, but merely argues that it is absurd to suggest that either would need to do so. We reject this argument.

{¶ 31} Ohio Power is not required to have the Siting Board or the Power Board approve the individual appropriations in order to appropriate a property or an interest or right therein. *See* R.C. 163.09(B)(1). But if it does get such approval, then it obtains the legal presumption of necessity. *See* R.C. 163.09(B)(1); *Hoyle v. DTJ Ents., Inc.*, 143 Ohio St.3d 197, 2015-Ohio-843, 36 N.E.3d 122, ¶ 23 (lead opinion) (a legal presumption imputes to certain facts or a group of facts a certain prima facie significance or operation); *Shepherd v. Midland Mut. Life Ins. Co.*, 152 Ohio St. 6, 15, 87 N.E.2d 156 (1949) (same). Simply because it may be inconvenient or tedious for Ohio Power to obtain the required resolutions or approvals for each appropriation to be entitled to a presumption under R.C. 163.09(B)(1)(a) or (c) does not mean that such an interpretation is unreasonable or absurd. Unreasonable consequences are those that are contrary to reason or sound judgment, are beyond the limits of acceptability or fairness, or result in unintended and serious legal consequences. *See Piazza v. Cuyahoga Cty.*, 157 Ohio St.3d 497, 2019-Ohio-2499, 138 N.E.3d 1108, ¶ 52-53 (Fischer, J., dissenting), citing *Black's Law Dictionary* 1772 (10th Ed.2014); *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990); *State ex rel. Dispatch Printing Co. v. Wells*, 18 Ohio St.3d 382, 384, 481 N.E.2d 632 (1985); and *State v. Wells*, 91 Ohio St.3d 32, 34, 740 N.E.2d 1097 (2001). And absurd

consequences occur when " 'the plain language of a statute results in an *obviously unintended result*.' " (Emphasis sic.) *State ex rel. Meyer v. Warren Cty. Bd. of Elections*, 165 Ohio St.3d 134, 2020-Ohio-4863, 176 N.E.3d 699, ¶ 14, quoting *State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, ¶ 26 (plurality opinion). Here, application of the plain-language rule does not create any of those results. Thus, because neither the Siting Board nor the Power Board reviewed the individual appropriations in their necessity determinations, Ohio Power is not entitled to the rebuttable presumption under R.C. 163.09(B)(1)(a) or the irrebuttable presumption under R.C. 163.09(B)(1)(c).

{¶ 32} However, Ohio Power did present evidence of the necessity for the appropriations through Rentschler's testimony and exhibits submitted through her testimony, and it is thus entitled to the rebuttable presumption under R.C. 163.09(B)(1)(b). This rebuttable presumption gives rise only to a prima facie showing of necessity. *Hoyle* at ¶ 23-24. It did not shift the ultimate burden of proof from Ohio Power to the landowners but, rather, it imposed on the landowners " 'the burden of going forward with evidence to rebut or meet the presumption,' " *Hoyle* at ¶ 24, quoting Evid.R. 301. The landowners did not need to prove that Ohio Power acted in bad faith, abused its discretion, or acted with an improper purpose to satisfy this burden. Rather, if the landowners produced evidence that balances or counterbalances the presumption, then the presumption disappears, and the case must be resolved on the evidence presented under the original burden of proof. *Id*., citing *In re Guardianship of Breece*, 173 Ohio St. 542, 555, 184 N.E.2d 386 (1962).

### 3. Remand to the trial court is necessary

{¶ 33} In this case, the trial court erred when it applied the rebuttable presumption in R.C. 163.09(B)(1)(a) and the irrebuttable presumption in R.C. 163.09(B)(1)(c). Additionally, the court's necessity analysis was flawed. The trial court determined that Ohio Power had satisfied its burden to prove that the easement

16

terms were necessary under R.C. 163.09(B)(1)(b), but it did not analyze the challenged easement terms separately and instead relied on Rentschler's testimony and the expertise of Ohio Power to conclude that the easement terms were necessary. The appellate court held that this blanket finding was inappropriate under our decision in *Norwood*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115. We agree.

{¶ 34} The General Assembly requires an agency to set forth in its verified petition the "parcel or contiguous parcels in a single common ownership, or interest or right therein," that it seeks to appropriate. R.C. 163.05. Thus, the agency must demonstrate the necessity of that appropriation—the need to take the property, or interest or right therein, set forth in its verified petition. In this case, the easement terms include various rights that Ohio Power seeks to take from the landowners. Therefore, each easement term that is challenged must be reviewed by the trial court. *See* R.C. 163.09(B)(2).

{¶ 35} Here, the trial court stated that it reviewed the easement terms and found them all necessary based on Rentschler's testimony and its belief that Ohio Power knows best. Generally, a trial court's findings of fact will be upheld when they are supported by some competent and credible evidence. *See Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984). While Rentschler did discuss each of the easement terms individually during her testimony, and while we have stated that some deference to the government or the agency may be appropriate in eminent-domain cases, *Norwood* at ¶ 62, 66, a blanket statement that all the easement terms are necessary, without findings to support that decision beyond the deference given to Ohio Power and Ohio Power's own agent, Rentschler, makes us question whether the trial court did conduct the appropriate review. Therefore, we remand the cause to the trial court to make the specific findings concerning the challenged easement terms consistent with the presumption set forth in R.C. 163.09(B)(1)(b). Another necessity hearing is not required, since

the error occurred during the trial court's analysis that followed the hearing. *See State ex rel. Stevenson v. Murray*, 69 Ohio St.2d 112, 113, 431 N.E.2d 324 (1982) ("Upon remand from an appellate court, the lower court is required to proceed from the point at which the error occurred"); *Montgomery Cty. Commrs. v. Carey*, 1 Ohio St. 463 (1853) (same).

## B. The landowners are not entitled to fees under R.C. 163.21(A) or (B)

{¶ 36} The secondary issue in this case concerns the appellate court's determination that the landowners were entitled to fees based on Ohio Power's decision to remove the easement term concerning distribution lines. We reverse the appellate court's judgment that Ohio Power must pay the landowners fees under R.C. 163.21(B), because the landowners forfeited that argument by failing to raise it in the lower courts. We also determine that the landowners are not entitled to fees under R.C. 163.21(A).

{¶ 37} Ohio Power sought to appropriate distribution-line rights in the easements against the landowners. According to the trial court's opinion, upon the commencement of the necessity hearing, in an off-the-record discussion, Ohio Power advised the court that the acquisition of distribution-line rights was not required, and it offered to withdraw that term from the easements. The landowners objected because they believed that any modification of the easements constituted an abandonment of the appropriation. Rentschler testified that the distribution-line rights were not necessary to the project and that Ohio Power agreed to remove that term. The trial court characterized Ohio Power's removal of the distribution-line rights from the easements as a "withdrawal" of a term and concluded that it did not materially alter the proposed appropriation and that it was not an abandonment of the appropriation.

{¶ 38} The landowners argued that the trial court erred in not awarding them fees, because, they asserted, Ohio Power had abandoned the appropriation with regard to the distribution-line rights. The argument was limited to

abandonment under R.C. 163.21(A). The appellate court agreed with the trial court that Ohio Power had not abandoned the "appropriation proceedings" and thus the landowners were not entitled to fees under R.C. 163.21(A). But the appellate court, going beyond the landowners' assignment of error, held that because the trial court had determined that Ohio Power was " 'not entitled to appropriate *particular property*' " (i.e., the distribution-line rights), the court was required to order costs against Ohio Power. (Emphasis sic.) 2021-Ohio-2714, 176 N.E.3d 778, at ¶ 74-76, quoting R.C. 163.21(B).

{¶ 39} The lower courts were correct that R.C. 163.21(A) is not implicated in this case. R.C. 163.21(A) requires a court to award the property owner various fees if the agency "abandon[s the] appropriation proceedings." While it is true that property rights are a bundle of sticks and Ohio Power relinquished one of the rights within the landowners' bundle, it did not abandon the appropriation proceedings, which is what is required under the statute. Therefore, R.C. 163.21(A) does not apply.

{¶ 40} As for whether the landowners are entitled to fees pursuant to R.C. 163.21(B) or 163.09(G), those arguments were forfeited by the landowners and should not have been resolved by the appellate court. *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15 (an argument that is not timely raised is deemed forfeited and is reviewed for plain error); *see also Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121-122, 679 N.E.2d 1099 (1997) (lead opinion) (explaining that the plain-error exception to a forfeited argument is applied in civil cases only in rare circumstances). Here, the landowners challenged their entitlement to fees under only R.C. 163.21(A) because Ohio Power had "abandoned" the distribution-line rights. Thus, other arguments relating to whether they were entitled to fees under a different statutory provision were forfeited. *Goldfuss* at 122. The appellate court overreached to provide relief where the landowners had not asked for it, ignoring the well-established rule that plain error

in civil cases is "sharply limited to the *extremely rare case* involving *exceptional* circumstances where the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself," (emphasis sic), *id.* This was error, and the landowners should not be awarded fees based on an argument that was not preserved.

{¶ 41} Therefore, we reverse the appellate court's judgment ordering that fees be awarded to the landowners under R.C. 163.21(B).

### III. CONCLUSION

{¶ 42} Ohio Power is not entitled to a rebuttable presumption under R.C. 163.09(B)(1)(a) or an irrebuttable presumption under R.C. 163.09(B)(1)(c), because it did not demonstrate that the Power Board or the Siting Board had reviewed the appropriations. Therefore, we agree with the Fourth District Court of Appeals' holding that R.C. 163.09(B)(1)(a) and (c) are inapplicable. We also agree with the appellate court's evaluation of the trial court's necessity determination under R.C. 163.09(B)(1)(b). Thus, we affirm the court of appeals' judgment reversing the trial court's determination that the appropriations are necessary. However, we do not remand the cause for a new hearing, because the error occurred after the hearing, when the trial court performed its analysis. Therefore, we remand the cause to the trial court for it to analyze whether each appropriation (i.e., each proposed easement term) is necessary.

{¶ 43} We agree with the lower courts that R.C. 163.21(A) is inapplicable because Ohio Power did not abandon the "appropriation proceedings." But we hold that the landowners are not entitled to fees under R.C. 163.21(B) with regard to the distribution-line term, because the landowners did not raise that argument in the lower-court proceedings. The Fourth District exceeded its authority in holding otherwise. Therefore, we reverse that portion of its judgment.

Judgment affirmed in part
and reversed in part

and cause remanded to the trial court.

O'CONNOR, C.J., and KENNEDY, DEWINE, DONNELLY, and STEWART, JJ., concur.

BRUNNER, J., dissents as to proposition of law No. III but otherwise concurs.

————————————

Porter, Wright, Morris & Arthur, L.L.P., Ryan P. Sherman, Christopher J. Baronzzi, Jason T. Gerken, and Syed Ahmadul Huda, for appellant.

Vorys, Sater, Seymour & Pease, L.L.P., Joseph R. Miller, Thomas H. Fusonie, John M. Kuhl, and Daniel E. Shuey, for appellees.

Roetzel & Andress, L.P.A., Stephen D. Jones, and Jeremy S. Young, urging reversal for amicus curiae FirstEnergy Service Company.

JobsOhio and Donnell R. Grubbs, urging reversal for amici curiae JobsOhio, Ohio Southeast, One Columbus, Dayton Development Coalition, REDI Cincinnati, Regional Growth Partnership, and Team NEO.

Affiliated Construction Trades Foundation and Rob Dorans, urging reversal for amicus curiae Affiliated Construction Trades Ohio.

McDonald Hopkins, L.L.C., Adam C. Smith, Matthew R. Rechner, and Richard W. Cline, urging reversal for amici curiae Columbia Gas of Ohio, Inc., the East Ohio Gas Company, d.b.a. Dominion Energy Ohio, and Ohio Gas Association.

Bricker & Eckler, L.L.P., Jennifer A. Flint, Anne Maria Sferra, and Brodi Conover; Flagel & Papakirk, L.L.C., James Papakirk, Gregory E. Hull, and Charles E. Rust; and Brian J. Pokrywka and Jeanne W. Kingery, urging reversal for amici curiae Dayton Power and Light Company, d.b.a. AES Ohio, Buckeye Power, Inc., Vectren Energy Delivery of Ohio, Inc., d.b.a. CenterPoint Energy Ohio, and Duke Energy Ohio, Inc.

Chad A. Endsley, Leah F. Curtis, and Amy Milam, urging affirmance for amicus curiae Ohio Farm Bureau Federation, Inc.

Goldman Braunstein Stahler Kenter, L.L.P., Aaron E. Kenter, and Clinton

P. Stahler, urging affirmance for amici curiae Glenn C. Weaver, Angela M. Cooney, Dale Howell, Elizabeth Howell, Lisa Grow, Jessica Grow, Charles W. Edelberger, Susan G. Edelberger, Matthew Tuck, Rebecca L. Tuck, Steven M. Popp, Rechel Mantuhac, Jordan Boswell, Kayla Boswell, Chris Denise Brewer, Thomas L. Mies, Peggy J. Mies, Jeffry A. Kocher, Lori A. Kocher, and William H. Ricker.

Jay R. Carson and Robert Alt, urging affirmance for amicus curiae the Buckeye Institute.

Brian A Morris, Daniel Nelson, and Dana Berliner, urging affirmance for amicus curiae Institute for Justice.

_____