**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Letter of Notification Application of Columbia Gas of Ohio, Inc.*, Slip Opinion No. 2024-Ohio-4747.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-4747

IN RE LETTER OF NOTIFICATION APPLICATION OF COLUMBIA GAS OF OHIO, INC., FOR THE FORD STREET PIPELINE PROJECT; YORKTOWN MANAGEMENT, L.L.C., APPELLANT; OHIO POWER SITING BOARD, APPELLEE; COLUMBIA GAS OF OHIO, INC., INTERVENING APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Letter of Notification Application of Columbia Gas of Ohio, Inc.*, Slip Opinion No. 2024-Ohio-4747.]**

*Public utilities—Gas-pipeline construction—R.C. 4906.03(F)—R.C. 4906.10(A)(2) and (A)(3)—Adm.Code Ch. 4906-6—Ohio Power Siting Board properly approved application for construction of natural-gas-distribution pipeline under accelerated-review process set forth in R.C. 4906.03(F) for a gas pipeline that is not more than five miles long—Order affirmed.*

(No. 2023-0649—Submitted July 23, 2024—Decided October 3, 2024.)

APPEAL from the Power Siting Board, Nos. 22-1145-EL-BLN

and 22-1145-GA-BLN.

————————————

STEWART, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, BRUNNER, and DETERS, JJ., joined.

**STEWART, J.**

**{¶ 1}** In the proceedings below, the Ohio Power Siting Board granted the application of intervening appellee, Columbia Gas of Ohio, Inc. ("Columbia"), to construct the Ford Street Pipeline Project, a 3.7-mile natural-gas-distribution pipeline in the City of Maumee in Lucas County.  The board approved the pipeline project under R.C. 4906.03(F)(3), which provides an accelerated-review process for a proposed gas pipeline that is not more than five miles long.

**{¶ 2}** Appellant, Yorktown Management, L.L.C. ("Yorktown"), which owns land and a commercial office building adjacent to property that contains a portion of the approved route of the pipeline, has appealed.  Yorktown contends that the board failed to consider and resolve safety and environmental concerns related to the pipeline's siting in proximity to the western boundary of Yorktown's property.  Specifically, Yorktown questions the placement of the pipeline and the width of the easements necessary to safely construct, maintain, and operate the pipeline.

**{¶ 3}** As discussed below, Yorktown's arguments lack merit.  We therefore affirm the board's decision.

## I. FACTS AND PROCEDURAL BACKGROUND

**{¶ 4}** R.C. 4906.04 provides that no person shall construct a major utility facility in Ohio without first having obtained a construction certificate from the board. The proposed Ford Street Pipeline Project is described as a 3.7-mile natural-gas pipeline to be constructed in Maumee using a combination of private easements and public-road rights-of-way.  The pipeline will be 30 inches in diameter and is classified as a high-pressure distribution pipeline with a maximum allowable operating pressure of 145 pounds per square inch gauge.  The length and operating

pressure of the pipeline make it a "major utility facility" requiring the board's approval. *See* R.C. 4906.01(B)(1)(c) and 4906.04.

{¶ 5} R.C. 4906.03(F)(3) directs the board to adopt rules for conducting an accelerated review of an application for a construction certificate for a gas pipeline that is not more than five miles long. Consistent with that statutory provision, the board adopted Adm.Code Ch. 4906-6. Under the statute and the administrative rules, the board is required to approve an accelerated application no later than 90 days after its filing, unless review of the application is suspended for good cause shown. R.C. 4906.03(F)(3); Adm.Code 4906-6-09(A) and 4906-6-10(A) and (B).

{¶ 6} In December 2022, Columbia filed an accelerated application to construct the Ford Street pipeline. In January 2023, Yorktown filed a motion to intervene and initial comments in opposition to the proposed pipeline. Although no part of the proposed pipeline crosses or encroaches on Yorktown's property, Yorktown argued that it would suffer irreparable financial harm if the proposed pipeline is constructed along its western property line and so close to its commercial office building. In March 2023, an administrative-law judge granted Yorktown's motion to intervene.

{¶ 7} Under Adm.Code 4906-6-06(B), the board's staff is required to investigate each accelerated certificate application and submit a written report no less than seven days before the automatic-approval date. This rule also requires the board's staff to include in its report recommended findings under R.C. 4906.10, which, in turn, requires the board to make certain substantive findings before issuing a certificate for the construction, operation, and maintenance of a major utility facility.

{¶ 8} On March 10, 2023, the board's staff issued its "Report of Investigation," recommending that the project be automatically approved on March 17, subject to four conditions. The board's staff found that Columbia had satisfied the necessary criteria under R.C. 4906.10(A) for approval of its accelerated

application, including demonstrating the need for the pipeline. The report also included the board staff's analysis of the project's probable impacts on land use, safety, cultural resources, surface waters, and threatened and endangered species.

{¶ 9} On March 14, 2023, Yorktown filed a motion to suspend the board's consideration of Columbia's accelerated application. *See* R.C. 4906.03(F)(3); Adm.Code 4906-6-09. Among other claims, Yorktown argued that Columbia's application and the board's staff report failed to address safety concerns regarding construction of the proposed pipeline along the entire western boundary of Yorktown's property and less than 50 feet from its commercial office building. Columbia had already secured a permanent 30-foot easement and a temporary 50-foot construction easement from Yorktown's neighbor for the portion of the pipeline that would run along Yorktown's western property line. Yorktown asserted that these easements were not wide enough for Columbia to safely construct, operate, and maintain the pipeline. Yorktown requested that the board conduct a full hearing to develop the factual record and resolve these safety concerns as required by R.C. 4906.10(A)(2) (by determining "[t]he nature of the probable environmental impact" of the project) and R.C. 4906.10(A)(3) (by determining "[t]hat the [proposed project] represents the minimum adverse environmental impact").

{¶ 10} Because the board did not act on the accelerated application before the automatic-approval date recommended in the board's staff report, the application was deemed automatically approved by the board under Adm.Code 4906-6-10(B), subject to the staff's recommended conditions.

{¶ 11} On March 23, 2023, Yorktown filed an application for rehearing of the board's automatic approval of Columbia's accelerated application. *See* R.C. 4903.10; Adm.Code 4906-2-32(C). Yorktown argued that the board had failed to address the safety concerns created by the proposed pipeline's proximity to Yorktown's property and thus violated R.C. 4906.10(A)(2) and (A)(3). The board

4

denied rehearing on April 20, 2023. *In re Letter of Notification Application of Columbia Gas of Ohio, Inc.*, Power Siting Board No. 22-1145-EL-BLN, 2023 WL 3095408, *1.

{¶ 12} Yorktown appealed. The board filed a brief in defense of its order denying the application for rehearing. We granted Columbia's motion for leave to intervene, 2023-Ohio-2453, and Columbia filed a brief urging affirmance of the board's order.

## II. STANDARD OF REVIEW

{¶ 13} Under R.C. 4906.12, we apply the same standard of review to determinations of the Power Siting Board that we apply to orders of the Public Utilities Commission. Under that standard, we will reverse, vacate, or modify an order of the board only when, upon consideration of the record, we find the board's order to be unlawful or unreasonable. R.C. 4903.13. We have "'complete and independent power of review as to all questions of law'" in appeals from the board. *In re Application of Champaign Wind, L.L.C.*, 2016-Ohio-1513, ¶ 7, quoting *Ohio Edison Co. v. Pub. Util. Comm.*, 1997-Ohio-196, ¶ 16. We will not, however, "reverse or modify a board decision as to questions of fact when the record contains sufficient probative evidence to show that the board's decision was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty." *Id*.

## III. ANALYSIS

{¶ 14} Yorktown raises one proposition of law with four subparts. But before turning to the merits of this case, we address three preliminary issues: (1) the board's argument that we lack jurisdiction over Yorktown's due-process claim, (2) Columbia's argument that Yorktown has forfeited its right to challenge the board's denial of Yorktown's motion to suspend review of the accelerated application, and (3) Columbia's argument that Yorktown was not prejudiced by the board's order.

### A. Whether Yorktown's due-process argument is jurisdictionally barred

{¶ 15} Yorktown claims on appeal that the board violated Yorktown's due-process and fundamental private-property rights when it automatically approved Columbia's accelerated application without giving Yorktown a meaningful opportunity to be heard on its pipeline-safety claims. The board contends that we lack jurisdiction over Yorktown's due-process argument because Yorktown failed to raise this argument in its application for rehearing by the board as required by R.C. 4903.10(B). Yorktown maintains that it raised the due-process argument "in its application for rehearing when it argued that the Board's 'process' cannot 'ignore [the safety] concerns [raised by Yorktown] and fast track approval [of the accelerated application] without thorough investigation and analysis . . . .' "

{¶ 16} An appellant is jurisdictionally barred from raising a claim on appeal that was not specifically set forth in an application for rehearing of the board's order. *See* R.C. 4903.10(B); *In re Application of Ohio Power Co.*, 2014-Ohio-4271, ¶ 45. We strictly construe the specificity requirement in R.C. 4903.10. *See In re Complaint of Pilkington N. Am., Inc.*, 2015-Ohio-4797, ¶ 29. Yorktown's single mention of the word "process" in its rehearing application is not enough to put the board on notice of its due-process claim. Hence, Yorktown did not preserve a due-process argument in its application for rehearing and we lack jurisdiction to consider that argument on appeal. *See In re Complaint of Reynoldsburg*, 2012-Ohio-5270, ¶ 60-62.

### B. Whether we lack jurisdiction over Yorktown's challenge to the board's refusal to suspend its review of the accelerated application

{¶ 17} Yorktown claims that the board erred in denying its motion to suspend review of the accelerated application and set the matter for an evidentiary hearing. Columbia counters that we lack jurisdiction to consider this argument because Yorktown failed to raise the argument in its application for rehearing. Columbia also claims that we are jurisdictionally barred from considering this issue

because Yorktown failed to include this argument in its notice of appeal. As discussed, we lack jurisdiction over issues that were not set forth in a rehearing application as required by R.C. 4903.10. We also lack jurisdiction over alleged errors that were not set forth in the notice of appeal as required by R.C. 4903.13.

{¶ 18} However, Columbia's jurisdictional arguments lack merit. In its application for rehearing, Yorktown argued that the board's automatic approval of Columbia's accelerated application to construct the proposed pipeline was unlawful and unreasonable under R.C. 4906.03(F), which authorizes the board to (1) conduct an accelerated review and automatic certification of applications for the construction of gas pipelines that are less than five miles long and (2) suspend its review of such applications for good cause shown. In addition, in its rehearing application, Yorktown specifically requested that the board "rescind automatic approval of the Project, and set the matter for hearing to allow for a full presentation of facts and issues to develop the evidentiary record which will address unanswered questions related to safety and need." Yorktown also outlined its safety concerns in its application for rehearing, arguing that the board's failure to address those concerns rendered the board's automatic approval of the pipeline project improper. With this language, Yorktown sufficiently preserved the issue for review on appeal. *See Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 2011-Ohio-2720, ¶ 28.

{¶ 19} Yorktown set forth the following alleged error in its notice of appeal:

> The Board unlawfully and unreasonably allowed automatic approval of Columbia Gas's accelerated application because the Board failed to determine that the Project's impacts satisfy R.C. 4906.10(A)(2) and (A)(3) as unresolved questions remain about whether Columbia Gas can safely construct and operate the Project's proposed thirty-inch pipeline with a centerline only forty-two feet from Yorktown's building and an edge of operational area

only thirty-two feet from Yorktown's entire western property line, particularly when Columbia Gas is utilizing undersized easements in contradiction to the easements its application submits are required for the Project.

{¶ 20} Columbia is correct that Yorktown does not specifically allege that the board erred in refusing to grant Yorktown's motion to suspend review of the accelerated application or to set the matter for hearing. But unlike R.C. 4903.10, R.C. 4903.13 contains no specificity requirement for a notice of appeal. R.C. 4903.13 requires only that a notice of appeal "set[ ] forth the order appealed from and *the errors complained of*." (Emphasis added.) We have held that the sufficiency of a notice of appeal is "judged not merely by the form of the words used but also by their context." *Lycourt-Donovan v. Columbia Gas of Ohio, Inc.*, 2017-Ohio-7566, ¶ 45. In its notice of appeal, Yorktown cites pages 3 through 12 of its application for rehearing, which is where Yorktown preserved this alleged error for review by the board. We find that this language in Yorktown's notice of appeal put this court, Columbia, and the board on notice of the alleged error that Yorktown subsequently argued in its merit brief. *See Lycourt-Donovan* at ¶ 46.

## C. Whether Yorktown has demonstrated that it has suffered harm or prejudice as a result of the board's order

{¶ 21} Columbia argues that before addressing the merits of Yorktown's appeal, we must consider whether Yorktown has demonstrated that it has suffered any harm or prejudice as a result of the board's failure to suspend its review of the accelerated application and set the matter for hearing. Columbia states that Yorktown is alleging that the board did not properly consider Yorktown's public-safety concerns before determining that the project meets the requirements set forth in R.C. 4906.10(A)(2) and (A)(3). Columbia contends that the board has already rejected Yorktown's safety concerns, so to demonstrate harm or prejudice,

Yorktown needs to show how the board's refusal to suspend its review of the accelerated application prevented Yorktown from effectively challenging the board's order.

{¶ 22} A party that challenges an order of the board on appeal must be aggrieved by that order to warrant its reversal. *See In re Application of Black Fork Wind Energy, L.L.C.*, 2018-Ohio-5206, ¶ 23. Accordingly, we will not reverse an order of the board as unreasonable or unlawful "'unless the party seeking reversal shows that it has been or will be harmed or prejudiced by the order.' " *Id.*, quoting *In re Complaint of Buckeye Energy Brokers, Inc. v. Palmer Energy Co.*, 2014-Ohio-1532, ¶ 19; *see also Champaign Wind*, 2016-Ohio-1513, at ¶ 15.

{¶ 23} We resolve this issue in favor of Yorktown. Columbia's lack-of-harm-or-prejudice claim presumes the correctness of the board's order rejecting Yorktown's safety concerns. The board may suspend its review of an accelerated application upon a showing of good cause, R.C. 4906.03(F)(3), and at issue on appeal here is whether Yorktown's safety concerns constituted good cause for the board to suspend its review of Columbia's accelerated application. We cannot determine whether Yorktown has demonstrated harm or prejudice from the board's order until we first determine whether the board erred in refusing to suspend its review of the accelerated application. Stated differently, Columbia's lack-of-harm-or-prejudice claim is premature, so we reject it.

**D. Whether the board failed to determine the project's probable impacts as required by R.C. 4906.10(A)(2) and (A)(3)**

{¶ 24} Turning to the merits of Yorktown's appeal, Yorktown argues that the board erred in approving Columbia's accelerated application for the Ford Street Pipeline Project without addressing the serious public-safety concerns created by the pipeline's proximity to Yorktown's property. Yorktown maintains that it continually raised public-safety concerns, including the potential risks to human health, associated with the pipeline project but that the board never addressed those

concerns and instead improperly deferred to Columbia on those issues. As a result, Yorktown contends, the board failed to determine the proposed pipeline's probable environmental impacts as required by R.C. 4906.10(A)(2) and (A)(3). Yorktown's arguments lack merit.

### 1. Columbia's pipeline project does not require a permanent easement with a minimum width of 50 feet

{¶ 25} Yorktown first argues that the board refused to address inconsistencies between information contained in Columbia's accelerated application and the undisputed facts in the record concerning safety and environmental concerns posed by the pipeline project. According to Yorktown, Columbia indicated in its application that the pipeline project would require a permanent easement with a minimum width of 50 feet along the entire pipeline route. Yorktown states that contrary to what was stated in the application, Columbia obtained only a 30-foot-wide permanent easement on the property abutting Yorktown's entire western property line. Yorktown maintains that the inconsistency between the proposed easement in the application and the actual easement obtained by Columbia raises serious concerns about Columbia's ability to safely construct, operate, and maintain a pipeline along Yorktown's property line. Yorktown alleges that instead of addressing these safety concerns, the board deferred to Columbia's statements that it had complied with R.C. 4906.10(A)(2) and (A)(3) in its application.

{¶ 26} Columbia counters that Yorktown presented no evidence of inconsistencies between the easements referred to in its accelerated application and the easement it obtained along Yorktown's property line. According to Columbia, a reading of the application in its entirety confirms that "variable-width easement corridors were proposed from the outset." The board similarly contends that Columbia did not indicate in its application that the pipeline project would require a 50-foot-wide permanent easement, as Yorktown alleges.

**{¶ 27}** We find that contrary to Yorktown's assertion, Columbia did not indicate in its accelerated application that the pipeline project requires a minimum-width permanent easement. First, Columbia stated in one part of its application that the project would use a 100-foot-wide construction footprint, which would include a 50-foot-wide permanent easement and a 50-foot-wide temporary easement. But this representation was included in the section of the application discussing the project's impact on areas of ecological concern, such as national and state parks, floodplains, wetlands, wild and scenic rivers, and wildlife areas, refuges, and sanctuaries. The 50-foot-wide permanent and temporary easements referred to in the application would therefore apply only to the pipeline route running through the identified areas of ecological concern.

**{¶ 28}** Second, in an attachment to the accelerated application titled "Construction Plans," Columbia stated that construction rights-of-way would "typically" consist of a 50-foot-wide permanent easement and a 50-foot-wide temporary construction easement but that the easement widths would vary based on the circumstances. Likewise, the construction-plan drawings attached to the application depicted easements of varying widths. Thus, we do not find support for Yorktown's contention that Columbia's application commits Columbia to acquiring a 50-foot-wide permanent easement along the entire route of the pipeline project.

### 2. *Yorktown waived its right to challenge the board's rejection of certain testimony*

**{¶ 29}** Yorktown claims that the board refused to address Michael Scott's testimony about Columbia's Northern Loop Pipeline Project, a different pipeline project in Union County. Scott, a pipeline project manager for Columbia, testified before the Union County Court of Common Pleas in an appropriation case that Columbia had filed seeking to acquire easement rights along the route of the Northern Loop Pipeline Project. *See Columbia Gas of Ohio, Inc. v. GB Family Ltd.*

*Partnership*, Union C.P. No. 2022-CV-0129 (May 3, 2023); *Columbia Gas of Ohio, Inc. v. Holloway*, 2023-Ohio-4257 (3d Dist.). Several landowners filed a "necessity challenge" to Columbia's proposed taking, and Scott's testimony was submitted to establish the necessity of certain easement terms, including the minimum width of 50 feet for the permanent easement for purposes of operating, maintaining, and repairing the pipeline.

**{¶ 30}** Yorktown maintains that Scott's testimony in the Union County proceedings confirms and supports Columbia's representations in its accelerated application here that a 50-foot-wide permanent easement is necessary for the Ford Street Pipeline Project. Yorktown also asserts that because the proposed Ford Street pipeline would be six inches larger in diameter than the Northern Loop pipeline, Scott's testimony raises significant safety concerns about how Columbia could safely operate and maintain the Ford Street pipeline with no more than a 30-foot-wide permanent easement.

**{¶ 31}** Contrary to Yorktown's claim, the board addressed Scott's testimony in its April 20, 2023 rehearing entry in this case. Specifically, the board rejected Scott's testimony, on which Yorktown relies, finding that it was irrelevant in this case because the Northern Loop pipeline is a *transmission* line with a much greater maximum allowable operating pressure than the proposed Ford Street pipeline, which would be a lower-pressure *distribution* pipeline.

**{¶ 32}** The critical problem for Yorktown is that it did not file a second application for rehearing by the board under R.C. 4903.10 alleging error in the board's rejection of Scott's testimony in its order on rehearing. And that failure jurisdictionally bars this court from considering Yorktown's claim on this issue. *See Discount Cellular, Inc. v. Pub. Util. Comm.*, 2007-Ohio-53, ¶ 66 (failure to file a second rehearing application challenging additional grounds given by the Public Utilities Commission for its ruling in a first rehearing entry jurisdictionally bars this court's review of the commission's ruling based on those additional grounds).

### 3. *The board did not err in refusing to suspend its review of the accelerated application*

**{¶ 33}** Yorktown contends that the board erred in refusing to grant Yorktown's motion to suspend review of the accelerated application and set the matter for hearing. R.C. 4906.03(F) authorizes the board, an administrative-law judge, the board's chairperson, or the board's executive director to suspend review of an accelerated application for up to 90 days "for good cause shown." *See also* Adm.Code 4906-6-09 (setting forth the process for suspending review of an accelerated application). Once review of an accelerated application is suspended, the board or an administrative-law judge has discretion to set the matter for hearing. Adm.Code 4906-6-09(C). We find that Yorktown has failed to demonstrate that it provided the board with good cause to suspend its review of Columbia's accelerated application, thereby foreclosing Yorktown's assertion that it is entitled to a hearing.

**{¶ 34}** Yorktown argued before the board that it should suspend its review of the accelerated application because (1) Columbia indicated in its application that the pipeline route would require a 50-foot-wide permanent easement but that Columbia obtained only a 30-foot-wide permanent easement running along Yorktown's western property line and (2) Scott's testimony regarding the Northern Loop Pipeline Project indicated that Columbia's permanent easement along Yorktown's property may not be wide enough for Columbia to safely operate and maintain the proposed pipeline. We have already determined that Yorktown's allegation that Columbia's application stated a requirement that the proposed pipeline project necessitates a minimum permanent easement width is unfounded and that Yorktown has waived its right to challenge the board's rejection of Scott's testimony from prior proceedings regarding a different pipeline project.

**{¶ 35}** In addition, Yorktown has failed to cite any statute, administrative rule, or pipeline-safety regulation that requires a minimum setback or minimum easement width for natural-gas-distribution pipelines. Likewise, Yorktown has not

identified any evidence that the proposed pipeline *in this case* presents safety risks given its proximity to Yorktown's property. This lack of citation to relevant legal authority and record evidence suffices as a basis for this court to reject Yorktown's arguments. *See In re Application of Columbus S. Power Co.*, 2011-Ohio-2638, ¶ 14; *Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 2009-Ohio-6764, ¶ 39.

{¶ 36} As for Yorktown's argument that the board was required to hold an evidentiary hearing regarding Yorktown's safety concerns, the board did not err in refusing to set the matter for hearing. Adm.Code 4906-6-09(C) provides that "[o]nce an accelerated certificate application has been suspended, . . . [t]he board or administrative law judge may, at its discretion, set the matter for hearing." Because Yorktown has not shown that the board erred in refusing to suspend its review of the accelerated application, Yorktown was not entitled to a discretionary evidentiary hearing on Columbia's accelerated application.

### 4. *The board did not give "artificial deference" to Columbia*

{¶ 37} Yorktown maintains that the board and its staff failed to address necessary questions about the placement of the proposed pipeline and the easements necessary to safely construct, maintain, and operate the pipeline. Yorktown argues that instead of addressing those safety concerns by conducting a full review of the project, the board unlawfully and unreasonably gave "artificial deference" to Columbia throughout the accelerated-application process.

{¶ 38} Yorktown argues that the board ignored this court's holdings in *Ohio Power Co. v. Burns*, 2022-Ohio-4713, and *Norwood v. Horney*, 2006-Ohio-3799, and improperly deferred to Columbia regarding the safety concerns and potential risks to human health created by the proposed pipeline's proximity to Yorktown's property. Both *Burns* and *Norwood* involved the taking of private property for public use and the degree of deference that courts should afford to an entity exercising its eminent-domain power. But this case does not involve any taking of private property, including Yorktown's. To be clear, Columbia obtained an

easement running along the western border of Yorktown's property through an agreement with Yorktown's neighboring property owner, not through the exercise of eminent domain. Moreover, the board did not review the terms of that easement or any other individual easement agreement that Columbia obtained along the proposed pipeline route. Nor did the board adjudicate any rights involving Yorktown's private property. In sum, because this case does not involve the exercise of eminent-domain power, *Burns* and *Norwood* are inapposite.

{¶ 39} But even if *Burns* and *Norwood* applied here, Yorktown's "artificial deference" argument lacks merit. Yorktown's argument hinges on its claims that Columbia's accelerated application requires a 50-foot-wide permanent easement and that the board ignored Scott's testimony regarding the minimum easement width needed for such a project. But as discussed, Yorktown has not demonstrated error, let alone reversible error, with those arguments.

{¶ 40} Additionally, we are not persuaded by Yorktown's assertion that the board improperly deferred to Columbia regarding Yorktown's safety concerns. The board conditioned approval of the accelerated application on Columbia's complying with all relevant rules and regulations, including pipeline-safety standards established by the Pipeline and Hazardous Materials Safety Administration set forth at 49 C.F.R. 192.1 et seq. The Public Utilities Commission has adopted these regulations for the purpose of enforcing the safety of intrastate gas pipelines. Adm.Code 4901:1-16-03. The board also adopted the board staff's report, which requires Columbia—prior to beginning construction of the Ford Street Pipeline—to obtain and provide "on the case docket" copies of all permits and authorizations required by federal and state laws and regulations in areas that require such permits and authorizations. The board also approved the Ford Street Pipeline Project subject to the condition that issuance of the construction certificate "shall not exempt the facility from any other applicable and lawful local, state, or federal rules or regulations nor be used to affect the exercise of discretion of any

local, state, or federal permitting or licensing authority with regard to areas subject to their supervision or control."

**{¶ 41}** Yorktown criticizes the board's decision to condition approval of the accelerated application on Columbia's future compliance with federal, state, and local laws and regulations, arguing that it "is not the same as ensuring the safe construction, operation, and maintenance of the pipeline." But the board acted pursuant to its authority granted by the General Assembly. R.C. 4906.10(A) allows the board to grant a siting certificate "upon such terms, conditions, or modifications of the construction, operation, or maintenance of the major utility facility as the board considers appropriate." Moreover, we have consistently upheld the board's practice of imposing conditions on utility companies when issuing certificates to allow a company to build a major utility facility. *See In re Application of Buckeye Wind*, 2012-Ohio-878, ¶ 13-18 (lead opinion); *In re Application of Icebreaker Windpower, Inc.*, 2022-Ohio-2742, ¶ 39-40; *In re Application of Firelands Wind, L.L.C.*, 2023-Ohio-2555, ¶ 46, 65; *In re Application of Alamo Solar I, L.L.C.*, 2023-Ohio-3778, ¶ 41, 67. Accordingly, Yorktown has not established that the board acted unlawfully or unreasonably in its review of Columbia's accelerated application and in granting a certificate for construction of the proposed pipeline.

## IV. CONCLUSION

**{¶ 42}** Yorktown has not shown that the board acted unlawfully or unreasonably in approving the Ford Street Pipeline Project. Therefore, we affirm the board's decision.

Order affirmed.

––––––––––––––––––

Vorys, Sater, Seymour and Pease, L.L.P., Thomas H. Fusonie, Anna Sanyal, and Emily J. Taft, for appellant.

Dave Yost, Attorney General, and John H. Jones, Amy Botschner O'Brien, and Thomas G. Lindgren, Assistant Attorneys General, for appellee.

John R. Ryan Sr. and Melissa Thompson; and Porter, Wright, Morris & Arthur, L.L.P., L. Bradfield Hughes, and Eric B. Gallon, for intervening appellee.

_____